In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 07-1055

ANTOINETTE PIRANT,

*v.*  *Plaintiff-Appellant,*

UNITED STATES POSTAL SERVICE,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 9383—**Joan Humphrey Lefkow**, *Judge.*

———————

ARGUED OCTOBER 23, 2007—DECIDED SEPTEMBER 4, 2008

———————

Before BAUER, CUDAHY, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.*   Antoinette Pirant sued her former employer, the United States Postal Service, for an alleged violation of the Family Medical Leave Act, 29 U.S.C. §§ 2601-2654 ("FMLA"), but her suit failed on the threshold question of her eligibility for FMLA leave. She appeals, contending there were triable issues of fact regarding her FMLA eligibility—specifically, a factual dispute over whether she had worked the statutorily required 1,250 hours during the 12-month period preced-

ing the date of her unscheduled absence from work. *See* 29 U.S.C. § 2611(2)(A). The district court granted summary judgment for the Postal Service based on Pirant's uncontested payroll records, which showed that she worked 1,248.8 hours during the 12-month period preceding the date of her absence—1.2 hours shy of the minimum required by the FMLA.

Pirant asks us to reverse on a number of grounds. First, she claims that the Postal Service's inconsistent litigation positions regarding her FMLA eligibility entitle her to a trial. She also argues she should receive credit for two hours she lost due to a claimed wrongful suspension. Finally, she contends that the time she spent putting on and removing her gloves, uniform shirt, and work shoes should be counted toward her total hours of service.

We affirm. It is true that the Postal Service initially conceded Pirant's FMLA eligibility in its original answer. But it later obtained leave to file an amended answer denying eligibility and then submitted Pirant's payroll records on summary judgment documenting that her hours of service fell just short of the statutory requirement. This change in the Postal Service's pleading, permitted by the district court in its discretion, is not evidence of a material factual dispute about Pirant's FMLA eligibility; the work hours reflected in Pirant's payroll records were in fact uncontradicted. As to the alleged wrongful two-hour suspension, Pirant did not timely pursue her right to challenge the suspension and have the lost hours restored, so she is not entitled to count these hours for FMLA purposes. Finally, the time Pirant spent donning

and doffing her work gloves, uniform shirt, and shoes was "preliminary" and "postliminary" to her principal work activity under the Portal-to-Portal Act, 29 U.S.C. § 254, and therefore is noncompensable under the Fair Labor Standards Act, 29 U.S.C. § 254(a)(2), and is excluded from her FMLA hourly total.

## I. Background

Pirant had a tumultuous employment history with the Postal Service. Hired in 1993 as a mail handler, she was terminated at least four times, once each in 1994, 1995, 1999, and in 2000, and also received multiday suspensions in 1997 and 2000, all for failure to maintain a regular attendance record. Each time she was terminated, however, Pirant convinced her superiors to reduce the termination to a suspension.

In March 2001 Pirant again avoided termination by acceding to a written "last chance" agreement. The agreement provided as follows: "It is agreed by all parties to this agreement that any violation of the terms or conditions of this agreement will result in the re-issuance of a Removal. It is further understood that this settlement agreement constitutes an **absolute last chance** to remedy any conduct and attendance problems."

On August 14, 2001, and September 25, 2001, Pirant was again absent without excuse. On September 28 she received a 30-day notice of termination, but on October 26 convinced one of her supervisors to hold it in abeyance until December 10. This was merely a delay of the termination,

however, not a rescission of it; the additional grace period did not entitle Pirant to reinstatement, even if she maintained a perfect attendance record in the interim.

In the meantime, on October 5, 2001, Pirant's supervisor ordered her to clock out two hours early, claiming that she was being insubordinate and not doing her work.[1] Pirant clocked out and went home two hours early, but complained to Darrow Andrews, a Postal Service Dispute Resolution Specialist. Andrews investigated the incident, interviewing both Pirant and her supervisor.

At 10 p.m. on December 5, 2001, Pirant called the Postal Service and left a message with another employee that she could not make it to her next shift. She did not report to work on December 6. On December 7 she returned to work and told her supervisor that she had not been feeling well. The record contains reports reflecting that on December 10, 2001, Pirant visited the emergency room at Provident Hospital of Cook County and was examined for carpal tunnel syndrome and arthritis in the knee. The discharge notes reflect that she was directed not to work from December 10 to December 17, 2001. These reports are stamped "received" on December 14, 2001—presumably by the Postal Service. On December 21, 2001, Andrews informed Pirant of her right to file a formal grievance for restoration of back pay if she still thought she had been wrongfully ordered to clock out two hours early on

---

[1] The supervisor denied that he ordered Pirant to clock out, suggesting that she just left early. On summary judgment, however, we accept Pirant's version of the facts.

October 5. She had 15 days to do so, but did not meet this deadline.

On January 4, 2002, the Postal Service fired Pirant for violating her March 2001 last-chance agreement. On January 8 Pirant submitted a note from a doctor indicating that she had been absent on December 5 (not December 6), 2001, because of her arthritic knee. In addition, she submitted an absentee form filled out by the employee who had answered her absentee phone call on December 5. The original form had no indication of the reason for Pirant's absence, but Pirant had written in the explanation "arthritis in knee." On January 23 Pirant filed a formal complaint and request for back pay regarding the October 5 clock-out incident; this was more than a month after Andrews told her she could do so and well beyond the 15-day time limit for filing such a request. On April 8 Andrews submitted a report finding that Pirant's request for a formal inquiry into the October 5 incident was too late. Pirant did not pursue an internal appeal or any further challenge to the two-hour suspension, but she did file a formal grievance over her termination. On May 6, 2002, an arbitrator held that the Postal Service had good cause to fire her.

Pirant then took the dispute to federal court. She filed a complaint alleging that the Postal Service violated the FMLA by terminating her for missing work on December 6, 2001, due to her arthritic knee. In its first answer, the Postal Service admitted that Pirant had worked the required 1,250 hours in the 12 months preceding her unscheduled absence in order to qualify for FMLA coverage.

Later, however, the district court granted the Postal Service's motion for leave to file an amended answer denying that allegation.

The Postal Service then moved for summary judgment asserting (among other arguments) that Pirant had not worked the required 1,250 hours in the 12 months prior to her unscheduled absence and was therefore ineligible for FMLA leave. The Postal Service submitted Pirant's biweekly payroll records reflecting her work-hour totals for that 12-month period. The payroll records listed "Paid Hrs" and "TACS Hrs"—the latter is an acronym for the Postal Service's time-clock system. For the 12 months preceding December 6, 2001, Pirant's payroll records credited her with 1,248.8 Paid Hrs and 1,249.8 TACS Hrs. Both measures fell just short of the 1,250 hours required for FMLA eligibility.

The district court entered summary judgment for the Postal Service, holding that the undisputed payroll records established that Pirant had not worked the required 1,250 hours in the 12 months preceding her unscheduled absence. The court rejected Pirant's argument that the conflict between the Postal Service's first and amended answers—the first admitting her FMLA eligibility and the second denying it—entitled her to a trial. The court also held that the slight difference between Paid Hrs and TACS Hrs on Pirant's payroll records did not demonstrate a material factual dispute requiring a trial. On this point the court noted that TACS Hrs represented the hours clocked on the Postal Service's time-clock system, which were later converted into Paid Hrs according to regular

and overtime pay categories. Either way, Pirant had not come forward with any evidence to contradict the accuracy of her payroll records, which established her ineligibility for FMLA leave. Pirant also argued that the two hours she lost due to the October 5, 2001 suspension ought to be counted because her supervisor wrongly ordered her to "clock out," but the court viewed this as nothing more than a subjective belief on Pirant's part, not enough to create a material issue for trial. The court also held that the time Pirant spent putting on her gloves, uniform shirt, and shoes was not compensable under the Fair Labor Standards Act and therefore was excluded from the calculation of her hours of service under the FMLA. Finally, the court rejected Pirant's argument that her failure to satisfy the 1,250-hour requirement should be excused as *de minimis.*

## II.  Analysis

We review a grant of summary judgment de novo, construing the facts and all reasonable inferences in favor of the nonmoving party. *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1048 (7th Cir. 2000); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On appeal Pirant renews the arguments she made in the district court, with the exception of her contention that a *de minimis* shortfall in work hours may be disregarded for purposes of FMLA eligibility. She was right to drop this last argument. The FMLA guarantees eligible employees 12 weeks of leave for the birth or adoption of a

child; to care for a child, spouse, or parent with a serious health condition; or "because of a serious health condition that makes the employee unable to perform the functions of the [employee's] position." 29 U.S.C. § 2612(a)(1). "Eligible employee" is defined in the statute as "an employee who has been employed . . . for at least 12 months by the employer" and who has "at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). We have previously held that "[t]he statutory text is perfectly clear and covers the issue [of leave eligibility]. The right of family leave is conferred *only* on employees who have worked at least 1,250 hours in the previous 12 months." *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582 (7th Cir. 2000) (emphasis added). We proceed then to Pirant's remaining arguments.

**A. The FMLA's 1,250-hour Requirement**

Pirant maintains that the Postal Service's initial admission of her FMLA eligibility, and the removal and replacement of that admission with a denial in the amended answer, is enough to establish a material factual dispute entitling her to a trial. Not so. An amended pleading supersedes the original, *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002), and an inconsistency between the initial and amended pleading does not preclude summary judgment. That an amended pleading differs from the original is hardly surprising; that difference alone does not necessitate a trial.

Here, the Postal Service submitted Pirant's payroll records as objective evidence of Pirant's hours of service, and Pirant presented no evidence to refute the accuracy of her records. As the district court noted, the question of Pirant's eligibility under the FMLA does not turn on any issues of credibility or evidence-weighing; it is established (or not) by the total hours of work reflected in her payroll records.

On that point Pirant argues that the difference between the Paid Hrs and the TACS Hrs in her payroll records raises a triable factual dispute. Again, as the district court explained, TACS Hrs corresponded to the hours clocked on the Postal Service's time-clock system, while Paid Hrs reconciled those hours pursuant to "regular" and "overtime" categories of pay. By either measure, however, Pirant falls short—by an admittedly tiny .2 hours if the TACS Hrs total is used and an only slightly larger 1.2 hours if the Paid Hrs total is used. The discrepancy between these two hourly measures in the Postal Service's payroll records does not entitle Pirant to a trial. The district court properly concluded that the undisputed evidence of Pirant's hours of service for purposes of the FMLA fell just short of establishing the 1,250 threshold required by the statute.

## B. The Alleged Wrongful Two-Hour Suspension

Pirant also argues that she should be credited for the two hours she alleges she missed when her supervisor improperly ordered her to clock out early. Citing the Sixth Cir-

cuit's decision in *Ricco v. Potter*, 377 F.3d 599 (6th Cir. 2004), Pirant argues that hours not worked because of a wrongful suspension or discharge count as hours of service for FMLA purposes. *Ricco* does not help her here. That case involved a Postal Service employee who was terminated, then grieved the termination and won reinstatement and a make-whole order from an arbitrator. The employee later sought FMLA leave. The Sixth Circuit held that the hours-of-service calculation for purposes of determining the employee's FMLA eligibility should include the "hours the employee likely would have worked but for her unlawful termination." *Id.* at 605.

Here, Pirant was advised of her right to file a formal grievance and request for back pay after the October 5, 2001 clock-out incident. She did not do so—not, at least, until *after* she was terminated and long after the 15-day regulatory filing period had expired. Nor did she pursue any challenge to the dismissal of her belated grievance as untimely. As the district court noted, Pirant is left with only an unsubstantiated subjective belief that her two-hour suspension was wrongful. That is not enough to create a genuine factual dispute for trial. By failing to pursue a formal challenge to her suspension, Pirant has accepted that she is not entitled to either compensation or FMLA credit for the lost two hours.

## C.  Donning and Doffing of Gloves and Uniform

Finally, Pirant claims she is entitled to credit for the three to five minutes she spent each workday putting on and

removing her gloves, shoes, and work shirt. The FMLA provides that the determination of whether the hours-of-service requirement for leave eligibility has been met is governed by the legal standards of the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 2611(2)(C) (cross-referencing 29 U.S.C. § 207).

In *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), the Supreme Court held that the time employees spent donning aprons and overalls was compensable under the FLSA. But Congress responded with the Portal-to-Portal Act, 29 U.S.C. § 254, which amended the FLSA to exclude from compensation "activities which are preliminary to or postliminary to [the] principal activity [the employee is employed to perform] . . . which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 29 U.S.C. § 254(a)(2).

In a subsequent case interpreting the amended statute, the Supreme Court held that activities such as washing up or changing clothes would be compensable only "if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded" by the Portal-to-Portal Act. *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956). The Court held in *Steiner* that a battery manufacturer must compensate its employees for the 30 minutes they spent putting on unique protective clothing and bathing at the factory because those activities were indispensable to the health and safety of the employees. *Id*. The Court

noted, however, that "changing clothes and showering under normal conditions" generally would not be compensable.[2] *Id*. at 332.

In *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 594 (2d Cir. 2007), the Second Circuit held that the donning of a minimal amount of nonunique safety clothing, such as helmets, goggles, and steel-toed boots, is not compensable under the FLSA. Though this safety clothing was required by the employer in *Gorman*, the court held that the *de minimis* time spent "donning and doffing [ ] such generic protective gear is not different in kind from the 'changing clothes and showering under normal conditions,' which, under *Steiner*, are not covered by the FLSA." *Id.* (quoting *Steiner*, 350 U.S. at 249). The court distinguished *Steiner* on the ground that the special protective equipment in that case protected the employees from battery acid and therefore was indispensable to making the working environment nonlethal. *Id*. at 593.

---

[2] In *IBP, Inc. v. Alvarez*, 546 U.S. 21, 40-41 (2005), the Supreme Court held that post-donning and pre-doffing waiting time was not a principal activity and therefore was excluded from coverage under the Portal-to-Portal Act. The Court noted that the employer in *Alvarez* had not challenged the court of appeals' holding that the donning and doffing of unique protective gear was a "principal activity" and therefore compensable; the issue before the court was whether the post-donning/pre-doffing waiting time was compensable. *Id.* at 32.

*Gorman* is consistent with regulations implementing the Portal-to-Portal Act, *see* 29 C.F.R. § 790.7(g) ("[o]ther types of activities which . . . would be considered 'preliminary' or 'postliminary' activities, include . . . changing clothes, washing up or showering"), and other cases are in accord. *See Reich v. IBP, Inc.*, 38 F.3d 1123, 1126 n.1 (10th Cir. 1994) (requiring employees to put on safety glasses, earplugs, and a hard hat "is no different from having a baseball player show up in uniform, a businessperson with a suit and tie, or a judge with a robe"); *Anderson v. Pilgrim's Pride Corp.*, 147 F. Supp. 2d 556 (E.D. Tex. 2001) (donning of aprons, smocks, gloves, boots, hairnet, and earplugs not compensable).

Here, Pirant was not required to wear extensive and unique protective equipment, but rather only a uniform shirt, gloves, and work shoes. We agree with the Second Circuit's decision in *Gorman* that the donning and doffing of this type of work clothing is not "integral and indispensable" to an employee's principal activities and therefore is not compensable under the FLSA. It is, instead, akin to the showering and changing clothes "under normal conditions" that the Supreme Court said in *Steiner* is ordinarily excluded by the Portal-to-Portal Act as merely preliminary and postliminary activity. Accordingly, the district court properly concluded that Pirant is not entitled to include this time in her hours-of-service total for purposes of the FMLA.

AFFIRMED.