Jim WEISSMAN, Keith Griep, Randy Garrett, Gregory Peters, Shannon Fitzpatrick and James Geneman, Plaintiffs-Appellants,

v.

TYSON PREPARED FOODS, INC., Defendant-Respondent.†

Court of Appeals

*No. 2012AP2196. Submitted on briefs April 5, 2013.* *—Decided August 1, 2013.*

2013 WI App 109

(Also reported in 838 N.W.2d 502.)

† Petition for Review granted 12-16-13.

On behalf of the plaintiffs-appellants,the cause was submitted on the briefs of *Douglas J. Phebus* of *Arellano & Phebus, S.C.*, Middleton.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Thomas P. Krukowski* and *Keith E. Kopplin* of *Krukowski & Costello, S.C.*, Milwaukee, and *Joel M. Cohn, Ruthanne M. Deutsch*, and *Brittani S. Head* of *Akin Gump Strauss Hauer & Feld, LLP*, Washington, DC.

A nonparty brief was filed by *Mark A. Sweet of Sweet and Associates, LLC*, Milwaukee, for United Food & Commercial Workers Union Local 1473.

Before Blanchard P.J., Lundsten and Kloppenburg, JJ.

¶ 1. BLANCHARD, P.J. Tyson Prepared Foods, Inc., operates a meat processing plant in Jefferson, Wisconsin. Six hourly employees who work in the plant filed this wage claim action, as a class action, against Tyson under Chapter 109 of the Wisconsin Statutes. The employees allege that they are entitled to compensation for time they spend at the plant putting on ("donning") and taking off ("doffing") sanitary and protective equipment and clothing as required by Tyson and also time spent walking to and from work stations after donning and before doffing these items. The circuit court granted summary judgment to Tyson on

all the employees' claims on the ground that, under the pertinent Department of Workforce Development (DWD) administrative code provisions, donning and doffing this gear is not compensable because it is not "integral" and "indispensable" to principal work activities of the employees. The employees appeal.

¶ 2. We agree with the employees that, under the plain terms of the DWD code, the donning and doffing here constitute "preparatory and concluding" activities that are "an integral part of a principal activity," *see* Wis. Admin. Code § DWD 272.12(2)(e) (February 2009),[1] and therefore the donning and doffing time is compensable, putting aside the merits of any potential "de minimis" argument that might be available to Tyson on remand. Accordingly, we reverse on this basis and remand for further proceedings. Separately, because the parties have failed to develop independent arguments on the question of whether time spent walking to and from work stations after donning and before doffing is compensable, we do not reach that question.

## BACKGROUND

### *Facts*

¶ 3. The following are assertions of fact in the summary judgment materials. Under standard summary judgment methodology, we view these assertions in the light most favorable to the employees.

¶ 4. Tyson employees at the Jefferson plant produce primarily pepperoni for pizza toppings. As a company policy, Tyson requires plant employees, including

---

[1] All references to the Wisconsin Administration Code ch. DWD 272 are to the February 2009 version unless otherwise noted.

the plaintiffs, to don sanitary and protective equipment and clothing before they begin their principal duties each shift, and to doff these items at the ends of shifts. More specifically, as a condition of employment, employees must don and doff, while at the workplace, some combination of the following: hair nets; beard nets, if applicable; frocks (as Tyson explains, a frock is "like a coat with snaps in front"); vinyl gloves; vinyl sleeves; bump caps (lightweight hard hats); safety glasses; ear plugs; and "captive shoes," meaning shoes worn only in the plant and no place else, or rubber boots or rubbers over shoes, and in some cases steel toed shoes. The frocks and bump caps are color coded by work area or by responsibility of the wearer. Certain of these items are worn at least in part to prevent contamination of food.

¶ 5. Employees are not paid for at least some of the time they spend donning and doffing these items. Similarly, they are not paid for at least some of their time travelling on company property after donning and before doffing.

### Pertinent Statutes and Administrative Code Provisions

#### Wisconsin

¶ 6. As relevant here, WIS. STAT. § 109.03(1) (2011–12)[2] provides that employers "shall as often as monthly pay to every employee engaged in the employer's business . . . all wages earned by the employee." The DWD is charged with promulgating the rules at issue in this case, specifically with promulgat-

---

[2] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

ing "rules fixing a period of time, or hours of beginning and ending work during any day, night or week." Wis. Stat. § 103.02.

¶ 7. Wisconsin Admin. Code § DWD 272.12 provides, as "general requirements," "[p]rinciples for determination of hours worked." Under these general requirements, employees must be compensated

> for all time spent in "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer's business." The workweek ordinarily includes "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place."

Section DWD 272.12(1)(a)1. Section DWD 272 defines "workday" in relevant part through the concept of an employee's "principal activities":

> the period between "the time on any particular workday at which such employee commences [his or her] *principal activity or activities*" and "the time on any particular workday at which [he or she] cease[s] such *principal activity or activities*." The "workday" may thus be longer than the employee's scheduled shift, hours, tour of duty, or time on the production line.

Section DWD 272.12(1)(a)2. (emphasis added).

¶ 8. Central to the issue presented here, the code defines "principal activities" to include those "preparatory and concluding activities" that "are an integral part of a principal activity." Wis. Admin. Code § DWD 272.12(2)(e).

¶ 9. The code gives the following "examples of what is meant by an integral part of a principal activity," which is time for which employees must be com-

pensated, although as we explain below only the third example involving a chemical plant worker is disputed by the parties:

> a. In connection with the operation of a lathe, an employee will frequently, at the commencement of [his or her] workday, oil, grease, or clean [his or her] machine, or install a new cutting tool. Such activities are an integral part of the principal activity, and are included within such term.

> b. In the case of a garment worker in a textile mill, who is required to report 30 minutes before other employees report to commence their principal activities, and who during such 30 minutes distributes clothing or parts of clothing at the workbenches of other employees and gets machines in readiness for operation by other employees, such activities are among the principal activities of such employee. Such preparatory activities are compensable under this chapter.

> c. Among the activities included *as an integral part* of the principal activity are those closely related activities which are *indispensable to its performance.* If an employee in a chemical plant, for example, cannot perform [his or her] principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity. On the other hand, if changing clothes is merely a convenience to the employee and not directly related to [his or her] principal activities, it would be considered *as a "preliminary" or "postliminary" activity rather than a principal part of the activity.* However, activities such as checking in and out and waiting in line to do so would not ordinarily be regarded as integral parts of the principal activity or activities.

Wis. Admin. Code § DWD 272.12(2)(e)1.a.-c. (emphasis added).

¶ 10. To summarize, then, in the terms of the regulation, the employees here argue that their "preparatory and concluding activities" of donning and doffing at either end of the work day, as well as the time they spend walking to and from work stations after donning or before doffing these items, should be counted as "integral parts" of "principal activities" under Wis. Admin. Code § DWD 272.12(2)(e), and therefore compensable. The employees point to the chemical plant worker example in § DWD 272.12(2)(e)1.c. as analogous to their situation. In contrast, Tyson argues that these "preparatory and concluding activities" are not "integral" to the employees' "principal activities" and therefore should not be deemed "principal activities," specifically because the items donned and doffed are not "unique and extensive." Tyson also points to the chemical plant worker example, but argues that it is not analogous to the situation here.

### Federal

¶ 11. Some language contained in the DWD regulations is identical or similar to that used in portions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., and accompanying federal regulations. However, as discussed further below, no Wisconsin statute or DWD administrative code provision directs that the DWD code provisions pertinent here should be interpreted as incorporating federal statutes, federal regulations, or federal court interpretations of either the federal statutes or federal regulations.

¶ 12. Specific aspects of federal law raised by Tyson are addressed in the discussion below. It is sufficient to note at the outset that in 29 C.F.R. §§ 785.24 and 790.8, which are regulations promulgated by the U.S. Department of Labor based on the

FLSA, the phrase "principal activities" is defined to include "all activities which are an integral part of a principal activity." Following this statement are the three examples given above in WIS. ADMIN. CODE § DWD 272.12(2)(e)1.a.-c.—the lathe preparer, the garment worker distributing clothing parts, and the chemical plant worker—using language that generally tracks language used in the Wisconsin regulations. *See* 29 C.F.R. §§ 785.24 and 790.8.[3]

## *Proceedings in Circuit Court*

¶ 13. The plaintiffs filed this action for compensation and other relief on behalf of themselves and other similarly situated Tyson employees. After summary judgment briefing, the circuit court concluded that, in the absence of Wisconsin precedent interpreting WIS. ADMIN. CODE § DWD 272.12, the court should follow the definitions of activities "integral" to "principal activities" provided in some federal case law interpreting the FLSA, which require that items donned and doffed be "unique and extensive." On that basis, the court granted summary judgment to Tyson and dismissed the plaintiffs' motion for class certification as moot. The circuit court did not expressly and separately analyze the travel question, but it appears to have concluded that, since the donning and doffing time was not compensable, time spent travelling on company property after donning and before doffing could not be compensable. The plaintiffs appeal.

---

[3] More precisely, as Tyson points out, significant portions of the pertinent Wisconsin code language adopted in 1978 were clearly borrowed from federal regulations existing in 1978, which in turn flowed from the FLSA as amended and federal court interpretations of the FLSA as amended as of 1978.

## DISCUSSION

■■

¶ 14. We review a grant of summary judgment de novo, applying the same methodology as the circuit court. *Tews v. NHI, LLC*, 2010 WI 137, ¶ 40, 330 Wis. 2d 389, 793 N.W.2d 860. As indicated above, in interpreting and applying the pertinent DWD administrative code provisions we construe all reasonable factual inferences against summary judgment.

■

¶ 15. Turning to rules of interpretation, courts rely on the same rules of construction in interpreting regulations as in construing statutes. *See DOR v. Menasha Corp.*, 2008 WI 88, ¶ 45, 311 Wis. 2d 579, 754 N.W.2d 95. The essential, and here dispositive, first step has been summarized as follows:

> [W]e begin with the language of the statute, because it is the language that expresses the legislature's intent. Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning. We attempt to give reasonable effect to every word, avoiding both surplusage and absurd or unreasonable results.
>
> In addition to the language of the statute, scope, context, and purpose are perfectly relevant to a plain-meaning interpretation of an unambiguous statute. So too is statutory history. Accordingly, we examine the language, context, and history of the statute here while undertaking our plain meaning analysis.

*Crown Castle USA, Inc. v. Orion Constr. Group, LLC*, 2012 WI 29, ¶¶ 13–14, 339 Wis. 2d 252, 811 N.W.2d 332 (quotation marks, citations, and parentheticals omitted).

¶ 16. The parties agree that the question presented here is one of first impression in the Wisconsin courts. Both parties also take the position that the plain language of WIS. ADMIN. CODE § DWD 272.12 resolves the legal issue. For the following reasons, we agree with the plaintiffs' interpretation of the plain language of the code.

¶ 17. We begin with the "general requirements" that provide the "principles for determination of hours worked," under WIS. ADMIN. CODE § DWD 272.12(1)(a)1. As stated above, these provide that: (1) employees must be compensated for all time spent in "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer's business," and (2) the workweek ordinarily includes "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place." As we explain below, these general requirements are not in themselves necessarily dispositive, but they provide significant context for the more specific guidance found at § DWD 272.12(2)(e)1.a.-c., in particular subsection c.

¶ 18. Addressing first the "controlled or required" component, there is no dispute that the donning and doffing at issue in this case is controlled by, and required by, Tyson.

¶ 19. Turning to the "necessarily" component of the question of whether the donning and doffing occurs "necessarily and primarily for the benefit" of Tyson, the employees cite the need for Tyson to follow federal regulations that require workers in a plant such as the Tyson facility to adhere to hygienic practices. These required practices include wearing clean clothing and hairnets sufficient to prevent contamination of food,

390

food-contact surfaces, and food packaging materials. *See* 9 C.F.R. § 416.5; 21 C.F.R. § 110.10. As to the "primarily" component, the employees take the position that "Tyson, and not its employees, primarily benefits from the requirement . . . because Tyson's principal activity is processing sanitary and uncontaminated foods."

¶ 20. Tyson does not take a clear position on the questions of necessity or primary benefit. At one point in its briefing Tyson acknowledges that "[v]arious regulatory requirements are involved, including not only . . . food safety regulations . . ., which benefit employers and consumers, but also employee safety regulations, which generally benefit employees in any industrial setting." At another point, Tyson states that donning and doffing is required for the shared benefit of Tyson, the employees, and food consumers, but does not take a position as to whether it *primarily* benefits Tyson. Separately, through citation to federal court authority, Tyson appears to take the position that sanitary outer garments, in themselves, are "primarily for the benefit of the employee."[4]

¶ 21. Turning to the separate proposition in the "general requirements" of Wis. Admin. Code § DWD 272.12(1)(a)1. that a "workweek ordinarily includes 'all time during which an employee is necessarily required to be on the employer's premises, on duty or at a

---

[4] Despite appearing to take this position, Tyson does not ask us to affirm the circuit court's summary judgment decision as to some donned and doffed items if not other items. Similarly, the employees also do not ask for reversal of the judgment as regards some items if not others. Like the circuit court, the parties treat each employee's donning and doffing of various combinations of items as a unitary event, at least for purposes of this appeal. We follow this approach.

prescribed work place,'" there is no dispute that all donning and doffing occurs at times when the employees are necessarily required to be on company premises.[5]

¶ 22. As should be clear at this point, if the only DWD administrative code provisions at issue were the "general requirements" of WIS. ADMIN. CODE § DWD 272.12(1)(a)1., it would be a simple matter to conclude that the donning and doffing is compensable. Tyson's control over, requirement of, and necessity for requiring donning and doffing, on company property, are essentially uncontested. As to the relative benefits, Tyson's

---

[5] We recognize that this language originally derives from *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), which was abrogated by the Portal-to-Portal Act, amending the FLSA. *Compare Anderson*, 328 U.S. at 690–91 ("Since the statutory workweek includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace, the time spent [walking from time clocks near a factory entrance to their workstations] must be accorded appropriate compensation.") *with* 29 U.S.C. 254 (excepting from the FLSA coverage walking on the employer's premises to and from the location of the employee's "principal activity or activities" and activities that are "preliminary to or postliminary to said principal activity or activities"). However, current federal regulations state:

> The workweek ordinarily includes "all the time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place." (Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946))[.] The Portal-to-Portal Act did not change the rule except to provide an exception for preliminary and postliminary activities.

29 C.F.R. § 785.7. In other words, even under federal law, it continues to be relevant to the compensation question whether employees are "necessarily required to be on the employer's premises" at the time in question. Moreover, our touchstone is the plain language of the DWD administrative code, which does not qualify this language originating in *Anderson*.

need to produce foods free of contamination is surely among its greatest needs, and Tyson gains significant management benefits from requiring the employees to wear color-coded frocks and hats. It is true that some of the items donned and doffed benefit employees, as for example in keeping their personal clothes from being soiled or in preventing head injuries. Yet when one considers the obvious and significant benefits to Tyson of being able to attract able employees to a reasonably comfortable and safe workplace and retain them, even those items would appear to provide significant benefits to both Tyson and the employees. Moreover, as the employees point out, every on-the-job injury avoided saves Tyson from a worker compensation loss. At a minimum, the summary judgment evidence referenced by the parties in their briefing supports a reasonable inference that, for purposes of whether the donning or doffing is compensable, the required items are primarily for the benefit of Tyson.

¶ 23. However, as Tyson points out, our analysis is not limited to the "general requirements" we have just addressed. Those requirements only provide context for the more specific language, referenced above, defining compensable time in terms of a workday that includes "principal activity," as distinguished from "preparatory and concluding activities," under WIS. ADMIN. CODE § DWD 272.12(2)(e). Nevertheless, we bear in mind, as we move to the more specific language, our obligation to construe statutory and regulatory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related" statutes or regulations, taking into account "the scope, context, and purpose of the statute [or code]" insofar as they are ascertainable from the text and structure of the statute (or code)

itself. *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶¶ 46, 48 & n.8, 271 Wis. 2d 633, 681 N.W.2d 110.

¶ 24. As quoted above, WIS. ADMIN. CODE § DWD 272.12(2)(e)1.a.-c. consists of three examples. The first two examples establish that preparing machinery for work or handling elements of work product in advance of a principal activity constitutes compensable "integral parts of the principal activity" or "preparatory activities." *See* § DWD 272.12(2)(e)1.a. and b. Nothing in the parties' arguments persuades us that these two examples are helpful in resolving the issue here. Rather, it is the third example and its discussion, referencing the chemical plant employee, that is our focus and is most contested by the parties. We first quote it in full once more and then discuss it.

¶ 25. The third example reads:

> c. Among the activities included *as an integral part* of the principal activity are those closely related activities which are *indispensable to its performance*. If an employee in a chemical plant, for example, cannot perform [his or her] principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity. On the other hand, if changing clothes is merely a convenience to the employee and not directly related to [his or her] principal activities, it would be considered *as a "preliminary" or "postliminary" activity rather than a principal part of the activity*. However, activities such as checking in and out and waiting in line to do so would not ordinarily be regarded as integral parts of the principal activity or activities.

WIS. ADMIN. CODE § DWD 272.12(2)(e)1.c. (emphasis added).

¶ 26. This third example establishes three points and then adds a caveat. The first point is a general rule: An integral part of a principal activity includes but is not limited to an activity that is (1) closely related to the principal activity, and (2) indispensable to its performance. The second point is a more specific application of the general rule: Donning clothing necessary to the performance of a principal activity on the employer's premises is compensable.[6] The third point repeats the requirement that there must be a direct relationship between the conduct at issue and the principal activity, and provides the further guidance that donning or doffing clothes as a mere convenience to the employee is insufficient. The ending caveat is that time an employee takes to accomplish the mechanical steps of entering and exiting the workplace is not compensable, even if that involves waiting in a line.

¶ 27. To sometimes confusing effect, Tyson's arguments appear to conflate all three points, and are at times simply conclusory as to what types of gear would

---

[6] While the third example refers to "clothes," the parties apparently agree that the example is intended to cover the donning and doffing of safety equipment that might not fit the ordinary definition of "clothes." That is, the relevant "clothes" for a chemical plant worker would include, at least sometimes, such equipment as protective gloves, glasses, and the like. This is pertinent because in the instant case some items at issue, such as hair nets, safety glasses, and ear plugs, are not "clothes" in the ordinary sense of the term. However, like the parties, we interpret the third example to use "clothes" in a broad sense, including all gear that an employee might don or doff. Thus, the parties' central dispute as to the meaning of the third example is what it means to say that Tyson employees "cannot perform their principal activities" without changing in to and out of specific gear on Tyson's premises, as required, at the beginnings and endings of work shifts.

be "closely related," "indispensable," directly related, or merely convenient or "de minimis" to don and doff. Such confusion arises when Tyson refers to the need for a "tight nexus" between preparatory and principal activities, but then bases the argument that follows on the concept of indispensability. Tyson argues that the donning and doffing here are "several steps removed from actual execution" of, and "have little to do with," the principal activities. In one formulation, Tyson contends that the donning and doffing "is sufficiently removed from performance of [the employees'] principal productive activit[ies] that it is neither integral nor indispensable to the workers' jobs." We do not view any of these arguments as coming close to demonstrating that Tyson should prevail on summary judgment on the question of "closely related" or indispensability. We now turn to these two parts of the third example's general rule.

¶ 28. Taking the first part of the general rule in the third example, the concept of "closely related," we conclude that, when we construe all reasonable inferences from the summary judgment materials in the employees' favor, the donning and doffing at issue here is closely related to the principal activities of the employees. There is a reasonable inference of a tight connection or association between the equipment and clothing donned and doffed at the start and end of each shift and the principal activities of the employees. There appears to be no serious dispute, and there is certainly at least a reasonable inference, that Tyson requires employees to don most if not all items to keep food from becoming contaminated, to operate more efficiently, and to limit Tyson's liability for and costs associated with employee injuries. In all workplaces there are requirements that are not, in themselves, integral to the employee's principal work activities,

such as arriving at work on time or dressing in a manner that does not reflect poorly on the employer. Here, in contrast, Tyson requires the employees to don and doff the sanitary and protective equipment and clothing on Tyson premises for the purpose of allowing the employees to perform their principal activities in a safe, sanitary, and efficient manner. Plainly, the activity is closely related to the principal activities of the employees.

¶ 29. Turning to the second part of the general rule of the third example, the activity at issue must be "indispensable," so that, for example, the chemical plant worker in the example "cannot perform" principal activities without participating in the activity at issue. The example contrasts indispensable activity with activity that is both "merely a convenience to the employee" and not directly related to any principal activity. The rule does not provide an example of merely convenient activity.

¶ 30. The primary definitions for the word "indispensable" found in The American Heritage Dictionary of the English Language include, "Absolutely necessary; essential" and "Obligatory; unavoidable." *http://ahdictionary. com/word/search.html?q=indispensable* (last visited July 25, 2013). The word "convenience" is primarily defined as, "The quality of being suitable to one's comfort, purposes, or needs" and "Personal comfort or advantage." *http://ahdictionary.com/word/search.html?q=convenience* (last visited July 25, 2013).

¶ 31. Relying on these definitions, it is clear that the donning and doffing here are obligatory and not merely for the comfort or advantage of employees. An example of merely convenient preparatory activity il-

lustrates our view. Imagine that an employee chooses to ride a bicycle to work, and as a result feels the need to change clothing in the workplace before beginning his or her principal activity. The change of clothing would be a mere convenience to the employee. In contrast, the employees here are obligated by Tyson to don and doff the items at issue at work for the safety of the employees and the safety of the foods they are helping to produce.

¶ 32. It is significant that in the chemical plant example, Wis. Admin. Code § DWD 272.12(2)(e)1.c., the employee changes clothes "on the employer's premises" and the example implies that safety laws, rules of the employer, and the nature of the work would all require the chemical plant employee to change clothes. Those elements are also present here, where the employees are required to don and doff the sanitary and protective items at work. A footnote to a federal regulation that has many overlapping features with the Wisconsin code provisions at issue here states that one situation in which an employee "cannot" perform his or her principal activities without putting on certain clothes may be "where the changing of clothes on the employer's premises is required by law, by rules of the employer, or by the nature of the work." 29 C.F.R. § 790.8(c) n.65; *see also* § DWD 272.12(1)(a) (workweek "ordinarily includes 'all time during which an employee is necessarily required to be on the employer's premises' ").

¶ 33. In one argument, Tyson links the two concepts of indispensability and "integral part," then adopts a standard for compensability for the linked concepts that comes close to what one federal court has characterized, appropriately in our view, as "truly bizarre." *See Spoerle v. Kraft Foods Global, Inc.*, 527 F. Supp. 2d 860, 864 (W.D. Wis. 2007). Tyson's argument is

that donning clothing or equipment is "integral and indispensable" only when done in connection with principal activities involving "inordinately risky or burdensome conditions," or where "it would be impossible to safely complete the job without donning these items." Tyson bases this "inordinately risky or burdensome" or "impossible to safely complete" argument on its interpretation of a United States Supreme Court FLSA case, *Steiner v. Mitchell*, 350 U.S. 247 (1956). Tyson appears to interpret these standards exceedingly strictly, as if they refer only to situations in which the lives of workers are imminently at risk.

¶ 34. In *Steiner*, the employer argued that battery plant employees working extensively with toxic chemicals engaged in mere "preliminary" and "postliminary" activities under federal labor law when they showered and changed clothes before and after being exposed to the chemicals. In rejecting the employer's argument, the Court concluded that "it would be difficult to conjure up an instance where changing clothes and showering are more clearly an integral and indispensable part of the principal activity of the employment than in the case of these employees." *Id.* at 256.

¶ 35. Tyson asserts that what mattered in *Steiner* was that the battery plant employees "literally could not survive the toxic environment they worked in" without bathing and changing. However, the court in *Spoerle* questioned this same "literally could not survive" interpretation. *See Spoerle*, 527 F. Supp. 2d at 864–65. The court observed that the theory that "unless the activity is necessary to prevent the employee from actually *dying,* it is not 'integral' to a principal activity," creates "an uncomfortable distinction between hazards that kill and hazards that maim (or pose only a *risk* of death) and suggests that an employee is entitled to compensa-

399

tion for protecting herself from the former only." *Id.*[7] Tyson argues that there are "no special safety considerations" here, without defining what "special" might mean, except the peril of death as a result of injuries suffered in the workplace.

¶ 36. As most relevant here, we see nothing in the language of Wis. Admin. Code § DWD 272.12 that invites a distinction between the merely potentially unsafe and the demonstrably lethal, as Tyson argues. Moreover, as the employees point out, Tyson ignores at least some fraction of the equation, perhaps a large portion of it. Tyson gives short shrift to the undisputed fact that the employees are required to don most of the gear, at the Tyson facility, not only to protect themselves but also to protect the meat-consuming public from unappealing or even health-threatening food. The additional factor of needing to avoid food contamination plainly adds to the indispensability of the donning and doffing.

¶ 37. In sum, the donning and doffing of this equipment and clothing at the Tyson plant is required by Tyson in order for the employees to perform their principal activities, is closely related to those activities, and is indispensable to their performance. The activity of donning and doffing is not for the mere convenience of the employees, and it does not in any way resemble

---

[7] We cite *Spoerle v. Kraft Foods Global, Inc.*, 527 F. Supp. 2d 860 (W.D. Wis. 2007), for the force of its logic in this general context. We recognize that its specific holding interpreting the FLSA may have been effectively overruled in *Pirant v. United States Postal Service*, 542 F.3d 202, 208–09 (7th Cir. 2008). *See Spoerle v. Kraft Foods Global, Inc.*, 626 F. Supp. 2d 913, 918 (W.D. Wis. 2009) (*Pirant* would likely dictate different result), *aff'd,* 614 F.3d 427 (7th Cir. 2010). However, as discussed in the text below, *Pirant* and other federal authority cited by Tyson do not persuade us that our reading of the plain language of the Wisconsin Administrative Code is erroneous.

the mechanical steps of entering and exiting the workplace, the subject of the final caveat of the third example. Our interpretation of the more specific code provision, WIS. ADMIN. CODE § DWD 272.12(2)(e)1.c., is further supported when that provision is read in the context of the "general requirements" of § DWD 272.12(1)(a)1., as discussed earlier.

¶ 38. We now address the remaining major arguments that Tyson advances in opposition to the above interpretation of the language of the state regulation.

¶ 39. Tyson argues that if the donning and doffing here is compensable, "then virtually all preparatory and concluding activities will be." We are not, however, in a position to assess the extent to which employers require employees to don sanitary and protective equipment and clothing in the workplace for direct use in their principal activities in order to protect the employees and others. At the same time, it seems obvious that Tyson exaggerates. From work place to work place, the requirements and benefits will necessarily vary and, accordingly, produce differing results. But if it turns out to be true that significant numbers of Wisconsin employees are not being compensated for donning and doffing comparable to that here, then we fail to understand why that fact supports a different interpretation. Instead, it suggests that employers in these situations may be non-compliant.

¶ 40. In a related vein, Tyson argues that if the employees' argument here prevails, then the key distinction created in WIS. ADMIN. CODE § DWD 272.12 is rendered superfluous. Tyson refers to the distinction between: (1) compensable principal activities and their integral parts and (2) non-compensable preparatory or concluding activities that are not integral parts

of principal activities. However, Tyson does not support this argument by demonstrating that the distinction is superfluous under the employees' interpretation that we adopt. For example, employees electing to don equipment or clothing that is not required or necessary for participation in their principal activity might well be engaged in non-integral and therefore non-compensable preparatory activity. Nor does our interpretation necessarily mean that all employer-required clothing is compensable, including any and all gear donned and doffed away from the employer's premises. *See Bamonte v. City of Mesa*, 598 F.3d 1217, 1225–26 (9th Cir. 2010) (holding that police officer donning and doffing uniform and accompanying gear at home engages in non-compensable activity under the FLSA, in part because plaintiff "cited no law, rule or regulation mandating on-premises donning and doffing").

¶ 41. Tyson argues at length that we should follow certain federal court decisions interpreting the FLSA, but not follow other federal court decisions with conflicting results or reasoning. *Compare, e.g., Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 594 (2d Cir. 2007) (holding that donning and doffing helmet, safety glasses, and steel-toed boots not integral and indispensable to employment because work was not "done in a lethal atmosphere," and therefore gear not literally required for entry to plant) *with Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 365–66 (4th Cir. 2011) (holding that the "[d]onning and doffing of protective gear at the beginning and the end of a work shift are acts 'integral and indispensable' to the employer's principal activity when the donning and doffing are: 1) necessary to the principal work performed; and 2) primarily benefit the employer.").

¶ 42. On this point, we first note that there is significant federal authority that supports the employees' interpretation that we now adopt, in addition to the Fourth Circuit's *Perez* decision. For example, the Ninth Circuit has explained that " 'where the changing of clothes *on the employer's premises* is required by law, *by rules of the employer,* or by the nature of the work,' the activity may be considered integral and indispensable to the principal activities." *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004) (quoting 29 C.F.R. § 790.8(c)) (holding that donning and doffing plant uniforms was integral and indispensable to employees' principal activities because the employer required them to wear·the uniforms and doing so was performed for the benefit of the employer). We refer to additional federal authority below in addressing the primary federal case relied on by Tyson, *Pirant v. United States Postal Service*, 542 F.3d 202 (7th Cir. 2008).

¶ 43. We observe in this context that Tyson overstates the force of federal authority in the interpretation of the Wisconsin code provisions at issue in this appeal, based on Tyson's overly broad interpretation of a statement in *Madely v. RadioShack Corp.*, 2007 WI App 244, 306 Wis. 2d 312, 742 N.W.2d 559.

¶ 44. In *Madely*, this court addressed claims that managerial employees had been improperly classified as exempt from overtime payments under the terms of Wis. Admin. Code § DWD 274.04 (Nov. 2003), which provides in relevant part:

> Except as provided in s. DWD 274.08, each employer subject to ch. DWD 274 shall be exempt from the overtime pay requirements in s. DWD 274.03 and *these exemptions* shall be interpreted in such a manner as to be consistent with the Federal Fair Labor Standards

Act and the Code of Federal Regulations as amended, relating to the application of that act to all issues of overtime in respect to the following employees: . . . .

(Emphasis added.) It was in this specific context that we stated without additional citation or further explanation that "Wisconsin's administrative regulations are to be interpreted in such a manner as to be consistent with the Federal Fair Labor Standards Act (FLSA) and the Code of Federal Regulations," and that we would therefore "look to federal cases discussing the FLSA and the corresponding federal regulations to assist in our analysis." *Madely*, 306 Wis. 2d 312, ¶ 13. Tyson omits the fact that the code provision at issue in *Madely* explicitly directed interpretation "consistent with the [FLSA] and the [CFR] as amended." This significant "lock step" directive, lacking in the code provisions at issue here, appears to be the basis for our statement in *Madely* that Wisconsin's administrative regulations are to be interpreted consistent with the FLSA and the CFR. *See id.*, ¶ 13 & n.6. Accordingly, we do not read *Madely* as standing for the proposition that all Wisconsin administrative regulations must be interpreted in lock step with the FLSA and the CFR. *Cf. Bucyrus-Erie Co. v. DILHR*, 90 Wis. 2d 408, 421 n.6, 280 N.W.2d 142 (1979) (noting that our supreme court "has looked to . . . federal decisions before for guidelines in applying the state fair employment law").

¶ 45. Moreover, even if we were required to follow federal authority, we would still need to address how to choose among competing federal decisions that point to different results when applied to the evidence in this case. We also note that, given the fact that there is not a unified view in the federal courts over a "plain language" construction of pertinent language shared by the U.S. Department of Labor regulations and the DWD

404

regulations, it does not advance Tyson's argument to point to the general proposition that materially identical language is generally interpreted to mean the same thing, at least in the absence of ambiguity. With that clarification, we will address some additional federal cases because, in our view, some of those cases are more persuasive than others.

¶ 46. As it did in the circuit court, Tyson relies heavily on *Pirant. Pirant* involved a postal service mail handler donning and doffing the following: gloves of unidentified type used for an unidentified purpose; shoes with no special features or specified purpose; and a uniform shirt. *Pirant*, 542 F.3d at 208. There is no suggestion in the opinion that the gloves, shoes, or shirt addressed any particular safety concern or, for that matter, any other significant function related to the employee's principal activity. *See id.* Further, as an Arkansas federal district court has pointed out, the gear involved in *Pirant* "could be worn to and from work," and was apparently not required to be donned and doffed at the workplace. *See Helmert v. Butterball, LLC*, 2009 WL 5066759, at *11 (E.D. Ark. Dec. 15, 2009).[8] In contrast here, as stated above, most or all of the gear at issue is "captive," meaning that employees must don it after arriving for work each shift and doff it after

[8] The court in *Helmert v. Butterball, LLC*, 2009 WL 5066759, at *11 (E.D. Ark. Dec. 15, 2009), further observed, as relevant here, that *Pirant* did not involve

> donning and doffing in a meat processing plant—a distinction that is relevant due to the specific regulatory standards for food safety and quality that apply to meat processing plants. The plaintiffs cite to a number of [federal court] cases holding donning and doffing at meat processing plants "integral and indispensable" and therefore compensable under the FLSA.

(Citation omitted.)

ending their principal activities, thereby giving Tyson greater control over potential contamination.

¶ 47. Moreover, the court in *Pirant* relied in part on a federal regulation stating that, "when performed under the conditions normally present," "changing clothes" is non-compensable preliminary or postliminary activity.[9] *See Pirant*, 542 F.3d at 208. This federal regulation not only lacks a Wisconsin regulatory analog, but in fact appears to run contrary to the plain language of WIS. ADMIN. CODE § DWD 272.12(2)(e)1.c., which as discussed above specifically contemplates that changing clothing may be a potentially compensable activity, such as when it is not merely a convenience to the employee. In addition, *Pirant* relies on what appears to be an additional test, namely, whether donned

---

[9] This regulation, 29 C.F.R. § 790.7(g), provides:

> Other types of activities which may be performed outside the workday and, when performed under the conditions normally present, would be considered "preliminary" or "postliminary" activities, include checking in and out and waiting in line to do so, changing clothes, washing up or showering, and waiting in line to receive pay checks.

This regulation, based on the Portal-to-Portal Act (29 U.S.C. § 254), has not been adopted by DWD. Therefore, Tyson is inaccurate in asserting that "Wisconsin's regulations are *indistinguishable* from the federal regulations issued by the U.S. Department of Labor that provide the standards for compensable work under the Fair Labor Standards Act . . . as amended by the Portal-to-Portal Act." (Emphasis added.) And, as noted above at ¶ 32, at least one different feature of the federal regulations cuts directly *against* Tyson's arguments. *See* 29 C.F.R. § 790.8(c) n.65. (one situation in which an employee "cannot" perform his or her principal activities without putting on certain clothes may be "where the changing of clothes on the employer's premises is required by law, by rules of the employer, or by the nature of the work.").

406

clothing or equipment is "extensive and unique," *Pirant*, 542 F.3d at 208, which again is a test not tied to the specific language used in the Wisconsin Administrative Code. As referenced above, here the circuit court applied this "extensive and unique" test from *Pirant*, concluding that the donned items "are not unique and extensive," and therefore "not 'integral and indispensable.'"

¶ 48. In essence, Tyson argues that this court should borrow from federal authority two terms that do not appear in the DWD administrative code provisions: "extensive" and "unique." Tyson repeatedly argues that the items donned and doffed here are "generic," that is to say, not "unique." At points Tyson appears to acknowledge that its argument that donning and doffing these items is not "integral and indispensable" to principal activities depends on our concluding that the items are not "extensive and unique." Once it is recognized that we cannot read additional terms into the DWD administrative code provisions, there is little left of Tyson's argument.

¶ 49. Tyson correctly points out that, when DWD's predecessor agency, the Wisconsin Department of Industry, Labor and Human Relations, promulgated WIS. ADMIN. CODE § DWD 272.12 in 1978, the agency relied on the "integral" and "indispensable" concepts found in *Steiner*. Further, we recognize that the court in *Steiner* stated that "changing clothes and showering under normal conditions" was conceded to "ordinarily constitute [non-compensable] 'preliminary' or 'postliminary' activities" under the FLSA. *See Steiner*, 350 U.S. at 249. However, even assuming without deciding that we should interpret the Wisconsin Administrative Code language so that it is consistent with all statements made in *Steiner*, Tyson fails to explain why we should

conclude that the donning and doffing at issue here constitute "changing clothes . . . under normal conditions." Tyson does not provide a basis for us to reach the conclusion that under "normal conditions" Wisconsin workers must don and doff sanitary and protective equipment at work. Even assuming without deciding that putting on the shirt, gloves, and shoes at issue in *Pirant* was a "normal conditions" clothing change, we have no basis to conclude that the donning and doffing here is analogous.

¶ 50. Tyson argues that use of the "extensive and unique" test relied on by some federal courts is "the clean rule," compared with the more "murky" approach of asking whether donning the items is necessary, required, primarily of benefit to the employer, and done on company property. We question this proposition. Neither "extensive" nor "unique" appear to be self-defining terms. Moreover, Tyson's alternative assertions about the nature of the test belie Tyson's argument that the federal test, as interpreted by Tyson, is the "clean" rule. As should by now be apparent, Tyson at varying places in its briefing asserts a number of different versions of its asserted test.

¶ 51. Finally, we clarify that we express here no views on the merits of two topics referenced by the parties but not developed as legal arguments on appeal. The first is the "de minimis" concept frequently alluded to in passing by Tyson. It is an established feature of the FLSA, going back to at least a 1946 U.S. Supreme Court case, that even if an activity is an otherwise compensable "preliminary" or "postliminary" activity, under federal law, compensable time under the FLSA

> must be computed in light of the realities of the industrial world. When the matter in issue concerns

only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the [FLSA]. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved. The de minimis rule can doubtless be applied to much of the walking time involved in this case, but the precise scope of that application can be determined only after the trier of facts makes more definite findings as to the amount of walking time in issue.

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946), *superseded by statute on other grounds.*

¶ 52. The circuit court here did not address the "de minimis" issue. Moreover, neither party provides us with legal analysis, based on Wisconsin law as opposed to federal law, as to whether this doctrine applies to wage claims in Wisconsin and, if so, what standards should be applied in deciding whether donning and doffing need not be compensated because they are de minimis. We are uncertain whether the employees may be conceding that the de minimis rule may apply, in some fashion, to wage claims under Wisconsin law, and we do not address the topic further. The circuit court may address this topic in the first instance on remand if necessary.

¶ 53. The second issue we do not address is the potential compensability of travel time spent by the employees post-donning and pre-doffing. As indicated above, the circuit court apparently decided that its conclusion that the donning and doffing time was not compensable dictated that any time employees spent travelling on company property after donning and before doffing could not be compensable. In light of our

409

decision to reverse judgment in favor of Tyson on the topic of donning and doffing, it may be necessary to revisit the issue of travel time. Moreover, the parties refer to the travel time topic only in passing, without directly applying Wisconsin law to it as a separate legal issue. Therefore we express no opinion on this issue.

## CONCLUSION

¶ 54. For these reasons, we reverse the order granting summary judgment to Tyson.

*By the Court.*—Order reversed.