SHIRLEY S. ABRAHAMSON, J.
¶ 1. This is an appeal from a judgment and order of the circuit court for Rock County, Michael R. Fitzpatrick, Judge, in favor of United Food & Commercial Workers Union, Local 1473 (and various individuals[1]), the plaintiffs, *135 against Hormel Foods Corporation, the defendant. The court of appeals certified the appeal to this court pursuant to Wis. Stat. § 809.61 (2013-14).[2]
¶ 2. This is a "donning and doffing" wage and hour case. Employees seek compensation for time spent putting on ("donning") and taking off ("doffing") company-required clothing and equipment before and after shifts at Hormel[1] s canning plant located in Beloit, Wisconsin.
¶ 3. The Union filed a class action on behalf of a class of current and former employees in Hormel's plant, alleging that Hormel violated Wisconsin wage and hour laws by failing to pay the employees for time spent at the plant putting on and taking off the required clothing and equipment. Because the time spent putting on and taking off the required clothing and equipment is not included in the employees' compensation, the Union asserts that the employees are working more than 40 hours per week without being paid overtime.
¶ 4. The certification presents two questions:
(1) Is the donning and doffing of the company-required clothing and equipment compensable work time or non-compensable preliminary and postliminary activities under Wis. Admin. Code § DWD 272.12(2)(e) (Feb. 2009)[3]; and
(2) Even if the time spent donning and doffing is otherwise compensable work time, is this time non-compensable under the doctrine of de minimis non curat lex?
*136 ¶ 5. After a bench trial, the circuit court issued a comprehensive decision holding in favor of the Union and requiring Hormel to compensate its employees for time spent donning and doffing the required clothing and equipment at the plant at the beginning and end of the day and during unpaid meal periods (for the one percent of employees who left the plant during their meal periods). The circuit court further held, "Hormel has failed to carry its burden to show the applicability of the de minimis doctrine, and, therefore, that doctrine is not controlling (assuming it exists at all in Wisconsin law)."
f 6. Based on these conclusions, the circuit court awarded the class monetary damages of $195,087.30 broken down as follows: (1) $180,087.30 in unpaid wages for 5.7 minutes per day spent donning and doffing the required clothing and equipment; and (2) pursuant to a stipulation of the parties, $15,000 in damages for unpaid meal periods.
¶ 7. We conclude:
(1) Wisconsin Admin. Code § DWD 272.12 requires Hormel to compensate its employees for the 5.7 minutes per day spent donning and doffing the clothing and equipment at the beginning and end of the day. Relying on the Tyson Foods case, Weissman v. Tyson Prepared Foods, Inc., 2013 WI App 109, 350 Wis. 2d 380, 838 N.W.2d 502, as did the circuit court, we conclude, as did the circuit court, that the employees' donning and doffing clothing and equipment at the beginning and end of the day brought Hormel into compliance with federal food and safety regulations and was integral and indispensable to sanitation and safety in *137 the employees' principal work activities, namely food production.[4]
(2) The donning and doffing of clothing and equipment at the beginning and end of the day does not fall within the doctrine of de minimis non curat lex. The wages involved are not a "trifle" either for the employees or for Hormel.
f 8. We also briefly address whether the time spent donning and doffing Hormel's required clothing and equipment during meal periods is considered compensable work time.
¶ 9. On appeal Hormel argues that the Tyson Foods case was wrongly decided and "puts state law at odds with federal authority, namely, with the U.S. Supreme Court's holding" in a recent decision, Integrity Staffing Solutions, Inc. v. Busk, 135 S. Ct. 513 (2014). As a result, Hormel asks us to overturn Tyson Foods. We conclude that the discussion in Tyson Foods relating to compensating its employees for time spent donning and doffing the required clothing and equipment at the plant at the beginning and end of the day does not contravene Integrity Staffing.
I — I
¶ 10. The parties stipulated to many facts, and the circuit court also made numerous findings of fact following a bench trial. None of the circuit court's findings of fact are clearly erroneous. Here are the relevant facts.
*138 ¶ 11. The class consists of approximately 330 persons who are or were hourly employees of Hormel at the Beloit canning facility. We will refer to the class members as "the employees."
¶ 12. Hormel is a multi-national food company incorporated in Delaware and headquartered in Austin, Minnesota. The Union agreed that Hormel is a fine employer with a quality record and a history of producing good, safe food for customers around the world.
¶ 13. Hormel's Beloit canning facility prepares, cooks, cans, and ships a variety of "shelf stable" products including Hormel Chili, Mary Kitchen Hash, and Chi-Chi's Salsa, primarily for sale to consumers in retail stores. A "shelf stable" product can be stored almost indefinitely and without refrigeration.
¶ 14. The Beloit canning facility operates like an assembly line. Raw ingredients enter at one end of the facility and are stored in a cooler or dry storage. Products (which may consist of meat and seasoning ingredients) are out in the open in about one-half of the plant.
¶ 15. Employees grind and blanch the meat, and cook and can the product. A sophisticated, high-temperature, heavy-pressure process is used to make the product shelf stable. The product is moved to areas designated for pickup to ship to distribution centers or retailers.
¶ 16. Regulations promulgated by the United States Department of Agriculture (USDA), the United States Food and Drug Administration (FDA), and the federal Occupational Safety and Health Administration (OSHA) govern Hormel's production facilities. Products containing meat are regulated by the United States Department of Agriculture Food Safety Inspec *139 tion Service. Products not containing meat are regulated by the United States Food and Drug Administration. The federal Occupational Safety and Health Administration regulates workplace safety.
¶ 17. Federal regulations require Hormel to meet standards of cleanliness, quality, and safety in its plant and products. For example, the federal regulations require that persons working with food protect against contamination of food by maintaining hygienic practices like washing hands and wearing clean outer garments. While the federal regulations set forth performance standards, they generally do not require these standards be satisfied in any particular manner.
¶ 18. Hormel has adopted Work Rules in an effort to meet performance standards, maintain sanitation, and protect employees and consumers. The Work Rules require that employees wear certain clothing and equipment. If employees do not wear the required clothing and equipment, the employees are subject to discipline, up to discharge.
¶ 19. Specifically, Hormel's Work Rules require employees wear Hormel-provided hard hats, hearing protection, and eye protection. All exposed head and facial hair must be covered by a hair net. Employees are to wear clean and sanitary footwear at all times.[5] Clothing is provided by Hormel and must be changed daily or more often (as good sanitation practices dictate) and shall not be worn outside the plant. Hormel leases the clothes from Aramark, which picks up worn clothes, launders them, and drops off clean clothes.
*140 ¶ 20. Hormel does not compensate employees for time spent putting on or taking off (donning and doffing) the required clothing and equipment at the beginning and end of the day.
¶ 21. The parties stipulated that the median time for donning and doffing the required clothing and equipment at the beginning and end of the day, washing hands, and walking to and from the assigned work stations was 5.7 minutes per day, 28.5 minutes per week, or approximately 24 hours per year.[6]
| 22. The employees must "swipe in" between 1 and 29 minutes before the scheduled start of their shift. The employees must have their clothes changed, be swiped in, and be at their workstations at their assigned start times or they will be considered tardy. *141 The employees are paid by Hormel beginning at the scheduled start of their shift, not at the time of swiping in.
¶ 23. As a result, the employees are not paid for the time spent putting on their clothing and equipment before the scheduled start of their shift. The employees are also not paid for a 30-minute meal period. To leave the facility during the 30-minute meal period, the employees must doff their clothing and equipment before leaving the facility and don their clothing and equipment before returning to work.
¶ 24. Upon completion of the assigned duties for the day and after being released from work, the employees must "swipe out" and change back into their street clothes.
¶ 25. The employees are paid until they officially "swipe out." Thereafter, the employees must change from their required clothing and equipment into their street clothes. As a result, the employees are not paid for the time spent taking off their clothing and equipment after they swipe out.
¶ 26. In sum, the paid "workday" for employees at Hormel is measured from the scheduled commencement of the shift to the swipe out at the electronic clock after release by the supervisor less 30 minutes for the employees' meal period.
¶ 27. The circuit court found, on the great weight of the credible evidence, that putting on and taking off the clothing and equipment required by Hormel at the beginning and end of the day is integral and indispensable to the performance of the employees' principal activities. According to the circuit court, a close connection exists between the donning and doffing; compliance with the federal regulations of the United States Department of Agriculture, the Food and Drug *142 Administration, and Occupational Safety and Health Administration; and the employees' principal activities, producing canned food.
II
¶ 28. The standard of review applicable to the instant case is oft stated and is as follows:
¶ 29. This court will not overturn factual findings of the circuit court unless the findings are clearly erroneous. Royster-Clark, Inc. v. Olsen's Mill, Inc., 2006 WI 46, ¶ 11, 290 Wis. 2d 264, 714 N.W.2d 530.
¶ 30. The appeal revolves around the interpretation and application of Wis. Admin. Code § DWD 272.12. When interpreting administrative regulations the court uses the same rules of interpretation as it applies to statutes. Wis. DOR v. Menasha Corp., 2008 WI 88, ¶ 45, 311 Wis. 2d 579, 754 N.W.2d 95. Interpretation and application of a regulation is ordinarily a question of law that this court determines independently of the circuit court or court of appeals, but benefiting from the analysis of the other courts. State v. Brown, 2006 WI 131, ¶ 18, 298 Wis. 2d 37, 725 N.W.2d 262.
¶ 31. To determine the meaning of a regulation, we turn first to the text. Each word shall be interpreted so as to give it meaning, and none shall be treated as superfluous. See In re Guardianship of James D.K., 2006 WI 68, ¶ 16, 291 Wis. 2d 333, 718 N.W.2d 38. The context of the regulation and case law interpreting the regulation are also considered.
*143 ¶ 32. The parties dispute whether a circuit court's findings that an activity is integral and indispensable to the employees' principal activities is a question of fact or a question of law. If the question is one of fact, this court will not overturn the factual findings of the circuit court unless the findings are clearly erroneous. Wis. DOR, 311 Wis. 2d 579, ¶ 45. If the question is one of law, this court decides the question independently while benefiting from the analyses of the circuit court and court of appeals. Wis. DOR, 311 Wis. 2d 579, ¶ 44; Brown, 298 Wis. 2d 37, ¶ 18.
¶ 33. The Union raised the issue of the standard of review in its response brief, relying on a treatise that states, without citation, that" [w]hether an activity is characterized as . . . 'an integral and indispensable part' of the employee's principal activities (as distinguished from preliminary or postliminary to those activities), is a question of fact to be determined from all the circumstances."[7]
¶ 34. In reply, Hormel argued that the facts are undisputed and the interpretation and application of the regulations to undisputed facts is a question of law that the court decides independently of the circuit court or court of appeals.
¶ 35. We need not decide this issue. Whether we examine the questions certified as ones of fact or law, we conclude the circuit court reached the correct decision.[8]
*144 I — I hH I — I
¶ 36. We examine first whether the time spent donning and doffing Hormel's required clothing and equipment at the beginning and end of the day is considered compensable work time or non-compensable preliminary and postliminary activities under Wis. Admin. Code § DWD 272.12(2)(e).
¶ 37. The Department of Workforce Development regulations determining an employee's work hours are found in Wis. Admin. Code § DWD 272.12.
¶ 38. Wisconsin Admin. Code § DWD 272.12(l)(a)l. provides that an employee must be paid "for all time spent 'in physical or mental exertion . . . controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer's business.' "[9]
¶ 39. The parties agree that the donning and doffing are physical or mental exertion; are required by *145 Hormel; and are pursued necessarily and primarily for the benefit of Hormel's business.
¶ 40. Compensable time is defined in the regulations in terms of a "workday." See Wis. Admin. Code § DWD 272.12(l)(a)2. Workday is defined as the "period between 'the time on any particular workday at which such employee commences their principal activity or activities' and 'the time on any particular workday at which they cease such principal activity or activities.' "[10]
¶ 41. This regulation leads us to the meaning of the phrase "principal activity or activities" of the employee.
¶ 42. " [Principal activities" is defined in Wis. Admin. Code § DWD 272.12(2)(e) to include all activities that are "an integral part of a principal activity." (Emphasis added.) "Among the activities included as an integral part of the principal activity are those closely related activities which are indispensable to its *146 performance."[11] In other words, an integral part of a principal activity includes activities that are closely related to the principal activity and indispensable to its performance.[12]
¶ 43. The regulation gives three examples of "what is meant by an integral part of a principal activity" justifying compensation for an employee. The third example relates to a chemical plant worker who dons and doffs clothing and equipment. This example seems closest to the facts of the instant case, and is therefore most helpful in deciding the instant case. Here are the three examples in the regulations:
a. In connection with the operation of a lathe, an employee will frequently, at the commencement of their workday, oil, grease, or clean their machine, or install a new cutting tool. Such activities are an integral part of the principal activity, and are included within such term.
b. In the case of a garment worker in a textile mill, who is required to report 30 minutes before other employees report to commence their principal activities, and who during such 30 minutes distributes clothing or parts of clothing at the workbenches of other employees and gets machines in readiness for operation by other employees, such activities are among the principal activities of such employee. Such preparatory activities are compensable under this chapter.
c. Among the activities included as an integral part of the principal activity are those closely related activities which are indispensable to its performance. If an employee in a chemical plant, for example, cannot *147 perform their principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity. On the other hand, if changing clothes is merely a convenience to the employee and not directly related to their principal activities, it would be considered as a "preliminary" or "postliminary" activity rather than a principal part of the activity. However, activities such as checking in and out and waiting in line to do so would not ordinarily be regarded as integral parts of the principal activity or activities.[13]
¶ 44. To determine whether the Hormel-required donning and doffing are merely incidental preparatory and concluding activities or are integral and indispensable to the employees' primary activities, we examine the third example, which we shall refer to as "the chemical plant example," and its interpretation and application by the court of appeals in Weissman v. Tyson Prepared Foods, Inc., 2013 WI App 109, 350 Wis. 2d 380, 838 N.W.2d 502. We shall refer to this case as the Tyson Foods case.
*148 ¶ 45. The plaintiffs in Tyson Foods were employees of a meat processing plant in Jefferson County, Wisconsin, operated by Tyson Prepared Foods, Inc. Tyson Foods required its employees to put on sanitary clothing and equipment before they began their duties for each shift and to take off these items at the end of their shifts.[14]
¶ 46. The clothing and equipment involved in Tyson Foods are very similar to those in the instant case: hair nets; beard nets; frocks (a coat with snaps in front); vinyl gloves; vinyl sleeves; lightweight hard hats; safety glasses; ear plugs; and "captive shoes."[15]
¶ 47. In Tyson Foods, the court of appeals began its analysis with Wis. Admin. Code § DWD 272.12(l)(a)l. and determined that Tyson Foods controlled the employees' clothing and equipment and that requiring employees to put on and take off the required clothing and equipment primarily benefited the employer.[16] Although the court of appeals viewed this initial inquiry as necessary, the court of appeals did not consider it dispositive.[17]
¶ 48. The Tyson Foods court of appeals then turned its inquiry to whether the period of contested compensation is included as a "principal activity," as distinguished from "preparatory and concluding activities," under Wis. Admin. Code. § DWD 272.l2(2)(e).[18]
*149 ¶ 49. The court of appeals concluded in Tyson Foods that the donning and doffing are compensable because they are integral and indispensable to the principal work activities of the employees in manufacturing food.
¶ 50. The court of appeals in Tyson Foods relied primarily on the chemical plant example set forth in Wis. Admin. Code § DWD 272.12(2)(e)(l)c. to analyze the issue. In this example, as set forth in full above, a chemical plant employee is entitled to compensation for time spent to don and doff protective clothing and equipment at the employer's premises.
¶ 51. Comparing the chemical plant employees and the Tyson Foods employees, the court of appeals determined that the chemical plant example in the regulations is analogous to the donning and doffing of the Tyson Foods clothing and equipment.[19]
¶ 52. In both the chemical plant example and Tyson Foods, safety laws, rules of the employer, and the nature of the work all require the employees to change clothes to do their respective jobs in the chemical plant and at the Tyson Foods processing plant.[20] In the Tyson Foods case, there was no serious dispute that Tyson Foods required employees to don most if not all items to keep food from being contaminated, to operate more efficiently, and to limit Tyson Foods' liability for and costs associated with employees' injuries.[21]
¶ 53. Although Tyson Foods gave short shrift to the undisputed fact that its employees were required to don most of the clothing and equipment to protect *150 the meat-consuming public from unappealing or even health-threatening food, the court of appeals did not. Certain of these items were worn at least in part to prevent contamination of food.[22] To the court of appeals, "needing to avoid food contamination plainly adds to the indispensability of the donning and doffing."[23]
¶ 54. The court of appeals concluded that donning and doffing clothes and equipment in the Tyson Foods case was indispensable for the safety of the employees and the safety of the food they help produce.[24] Thus, the time for donning and doffing was compensable.
¶ 55. The Tyson Foods case presents essentially the same fact situation as presented in the instant case.
¶ 56. Both Tyson Foods and Hormel operate food processing plants in Wisconsin subject to the same Wisconsin laws. The clothing and equipment requirements for employees of each company are essentially the same. Likewise, the clothing and equipment requirements for employees of each company serve essentially the same purposes: the safety of the employees and the safety of the food they help produce.
¶ 57. The testimony with regard to the purposes of Hormel's Work Rules is similar to the undisputed facts in Tyson Foods.
¶ 58. The Corporate Manager of Regulatory Compliance at Hormel testified that because Hormel's process is regulated both by the Food and Drug Admin *151 istration and United States Department of Agriculture, Hormel employees are required "to be clean in a manner to prevent product alteration or the general creation of unsanitary type conditions."
¶ 59. When asked whether Hormel's clothing and equipment requirements were to comply with federal regulations, the Corporate Manager replied, "They are. . . . The government just kind of gives us what they call performance standards you know, hey, look, we know there's various means to the ends." The required donning and doffing of the sanitary company clothing and equipment at the Beloit facility is a "means to an end," complying with the federal regulations regarding food sanitation and workplace safety.
¶ 60. Although several Hormel employees testified that they could do their assigned job function at Hormel without the aid of the donned and doffed items, Hormel's plant operation required proper sanitation standards and protective equipment to meet the federal regulations. Cleanliness and food safety are "intrinsic element [s]" of preparing and canning food at the Hormel canning facility. The clothing and equipment is integral and indispensable to the performance to the employees' job function (principal work activity) of preparing canned food. See Wis. Admin. Code § DWD 272.12(e)l.c.
¶ 61. Hypothetically the Hormel employees may be able to do their jobs in street clothes, however Hormel's Work Rules and Hormel's need to comply with federal regulations have created a tight connection between the donning and doffing and the principal activities of the employees.
¶ 62. In Tyson Foods and in the instant case, the clothing and equipment requirements at the beginning and end of the day are integral and indispensable to *152 the employees' principal work activities. Putting on and taking off the required clothing and equipment at the beginning and end of the day is tied directly to the work the employees were hired to perform — food production — and cannot be eliminated altogether without degrading the sanitation of the food or the safety of the employees.
¶ 63. The employees in Tyson Foods and in the instant case were compelled by the nature of their jobs in food production to change clothing and wear equipment to ensure food and employee safety. The nature of the employees' work makes the employer's requirement of putting on and taking off clothing and equipment at the beginning and end of the day an integral part of the employees' principal activity.
¶ 64. Hormel dismisses Tyson Foods, contending that the Tyson Foods case "puts state law at odds with federal authority, namely, with the United States Supreme Court holding" in a recent decision, Integrity Staffing Solutions, Inc. v. Busk, 135 S. Ct. 513 (2014). As a result, Hormel urges us to overturn Tyson Foods.
¶ 65. Integrity Staffing does not conflict with Tyson Foods. Because the Wisconsin administrative regulations at issue here are substantially similar to federal regulations, federal cases may assist in our analysis. See Tyson Foods, 350 Wis. 2d 380, ¶ 44; see also State v. Gudenschwager, 191 Wis. 2d 431, 439, 529 N.W.2d 225 (1995).
f 66. In Integrity Staffing, one of the federal regulations involved was substantially similar to Wis. Admin. Code § DWD 272.12(e); indeed the federal *153 regulations use an illustration substantially similar to the chemical plant example in the Wisconsin regulations.[25]
¶ 67. The employees in Integrity Staffing worked in a warehouse retrieving products from shelves and packaging the products for delivery to Amazon.com customers.[26] Integrity Staffing's employees were required to undergo antitheft security screening before leaving the warehouse each day.[27] The question presented to the United States Supreme Court was whether the employees' time spent waiting to undergo and then undergoing the security screenings was com-pensable under the Fair Labor Standards Act.
¶ 68. The federal court of appeals upheld the employees' claim for compensation viewing the screenings as an integral and indispensable part of the principal activity the employees were employed to perform; the court viewed the screenings as necessary to the employees' primary work as warehouse employees and for Integrity Staffing's benefit.[28] The United States Supreme Court reversed the federal court of appeals.
f 69. Applying federal regulations substantially similar to those at issue here, the United States Supreme Court held that "an activity is integral and indispensable to the principal activities that an employee is employed to perform — and thus compensable under the [Fair Labor Standards Act] — if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his *154 principal activities."[29] According to the Integrity Staffing Court, because the employer-required screenings were not tied to the productive work the employees were employed to perform — retrieving and packing products — and the screenings could have been eliminated without affecting the employees' ability to perform their principal activity of retrieving and packaging products,[30] the time spent waiting to undergo and undergoing security screening was noncompensable.[31]
f 70. The reasoning in Integrity Staffing is not, as Hormel argues, "squarely the opposite of the Court of Appeals' reasoning in [Tyson Foods]." Rather, the reasoning in Integrity Staffing is consistent with Tyson Foods. Nor is Integrity Staffing inconsistent with prior federal precedent.[32] Instead, Integrity Staffing once again clarified that whether an activity is integral and indispensable to an employee's principal activities is *155 answered by reference to the nature of the employees' job duties. Simply put, the donning and doffing cases are fact dependent.
¶ 71. Both Integrity Staffing and Tyson Foods support the proposition that just because the employer requires employees to perform an activity that benefits the employer does not automatically render that activity integral and indispensable to an employee's principal work activities, and thus compensable. See Integrity Staffing; 135 S. Ct. at 519; Tyson Foods, 350 Wis. 2d 380, f 26. Both cases declare that an activity is integral and indispensable to the principal activities if it is an intrinsic element with which the employee cannot dispense if he or she is to perform the employee's principal activities.[33] Integrity Staffing does not contradict Tyson Foods; Tyson Foods remains good law.
¶ 72. Another recent United States Supreme Court decision, Sandifer v. United States Steel Corp., 134 S. Ct. 870 (2014), discusses the issue of compensation for donning and doffing.
¶ 73. In Sandifer, employees were required to wear special clothing and protective equipment and devices because of the hazards at steel plants.[34] The statutory provision interpreted in Sandifer was 29 U.S.C. § 203(o).[35] Section 203(o) provides that the *156 compensability of time spent "changing clothes or washing at the beginning or end of each workday" is a subject appropriately committed to collective bargaining.[36] U.S. Steel, the defendant, contended that the provision in the collective bargaining agreement rendering noncompensable the time spent donning and doffing the special clothing and protective equipment and devices was a valid provision under 29 U.S.C. § 203(o).[37]
¶ 74. According to the Sandifer Court, the exception for collective bargaining agreements in 29 U.S.C. § 203(o) applies only when "changing clothes" is " 'an integral and indispensable part of the principal activities for which covered workmen are employed.' "[38] U.S. Steel did not dispute the Seventh Circuit's conclusion that were it not for 29 U.S.C. § 203(o) and the collective bargaining agreement, the time spent donning and doffing the special clothing and protective equipment and devices would have been integral and indispensable to the principal activities for which the employees were employed.[39] Thus, the time would have been compensable.
¶ 75. Analyzing dictionary definitions of the statutory terms "change" and "clothes," the Sandifer Court concluded the time spent putting on and taking off the special clothing and protective equipment and devices was, on the whole, time spent "changing clothes" under 29 U.S.C. § 203(o).[40] As a result, the *157 time spent donning and doffing was not compensable under 29 U.S.C. § 203(o) and the collective bargaining agreement.[41]
¶ 76. No counterpart to 29 U.S.C. § 203(o) exists in Wisconsin law. Although the clothing and protective equipment and devices at issue in Sandifer were more specialized than those at issue in the instant case, the Sandifer case supports the conclusion that the clothing and equipment at issue in the instant case is integral and indispensable to the employees' principal work activities.
¶ 77. Moreover, although Hormel and the Union have entered into a collective bargaining agreement, the agreement does not speak to the compensability of time spent donning and doffing the required clothing and equipment.
¶ 78. Applying Tyson Foods, Integrity Staffing, and Sandifer, we conclude that donning and doffing the clothing and equipment at the beginning and end of the day in the instant case is "integral and indispensable" to the employees' principal activities of producing food products. Accordingly, we affirm the circuit court's judgment and order that the employees should be compensated for the 5.7 minutes per day spent donning and doffing the required clothing and equipment at the beginning and end of the day under Wis. Admin. Code § DWD 272.12.
IV
¶ 79. We next examine whether the time spent donning and doffing Hormel's required clothing and equipment during meal periods is considered compensable work time.
*158 f 80. Hormel does not pay the employees for their 30-minute meal period.
¶ 81. In the circuit court, the Union argued that the unpaid meal periods were compensable under two regulations. First, Wis. Admin. Code § DWD 272.12(2)(c), which applies to "[r]est and meal periods." Second, Wis. Admin. Code § DWD 274.02(3), which provides the test for when a meal period is "on-duty," and thus counted as compensable work time.[42]
f 82. We will address the applicable regulations, Wis. Admin. Code §§ DWD 272.12(2)(c) and 274.02(3), in turn.
¶ 83. First, Wis. Admin. Code § DWD 272.12(2)(c)2. provides that "[b]ona fide meal periods of 30 minutes or more are not work time. . . . The employee must be completely relieved from duty for the purposes of eating regular meals. . . . The employee is not relieved if they are required to perform any duties, whether active or inactive, while eating."
¶ 84. Second, Wis. Admin Code § DWD 274.02(3) states that" [t]he employer shall pay all employees for on-duty meal periods, which are to be counted as work time. An on-duty meal period is a meal period where *159 the employer does not provide at least 30 minutes free from work. Any meal period where the employee is not free to leave the premises of the employer will also be considered an on-duty meal period."
¶ 85. The circuit court declared that the required donning and doffing of clothing and equipment to leave the Hormel plant during the 30-minute meal periods denied employees a bona fide 30-minute meal period in violation of Wisconsin law. Nevertheless, the circuit court refused to award damages for employees who remained on site during the meal period. The circuit court did not adopt the Union's position that the employees were to be reimbursed for the alleged lost 30-minute meal break when the employees did not leave the premises but simply sat in the lunch room for 30 minutes and ate their meal. The circuit court labeled the Union's contention far too broad in its scope and found it was unsupported by credible evidence.[43]
¶ 86. As the circuit court acknowledged, "evidence about the lunch period was sparse." The circuit court apparently agreed with Hormel's position that even if liability were found for the unpaid meal period, damages could be awarded only to the employees who left the premises during the meals period. The circuit court accepted the evidence that 1% of the employees donned and doffed the clothing and equipment and left *160 the premises for meals. The parties stipulated that if the circuit court accepted the 1% evidence, the damages on the unpaid meal period claim would be $15,000.
¶ 87. The parties explained in the stipulation that the stipulation was entered to limit the issues and expedite the trial. Neither party took any opportunity at the circuit court or thereafter to challenge the circuit court's $15,000 damage award.
f 88. In this court, neither Hormel nor the Union made any arguments specifically regarding the com-pensability of the unpaid meal periods. They merely discussed the meal periods in stating the background of the dispute.
¶ 89. Hormel's counsel never discussed the com-pensability of the unpaid meal periods in his briefs to the court of appeals or this court or in oral argument.
¶[ 90. As the concurrence/dissent points out, the Union's counsel did responded to several questions from the court at oral argument regarding the com-pensability of unpaid meal periods. However, the Union's counsel did not, as the concurrence/dissent contends, "renew" any claim for compensation for unpaid meal periods aside from defending the circuit court's $15,000 damage award for the 1% of the employees who left the premises for meals.[44] As the excerpts of oral argument quoted in the concurrence/dissent show, the Union's counsel was "not asking for pay for the other 99%" of the employees.[45]
¶ 91. Instead, Hormel's and the Union's arguments to both this court and the court of appeals *161 addressed only the circuit court's determination that 5.7 minutes spent per day donning and doffing the required clothing and equipment is "integral and indispensable" to the employees' principal work activities of food production.
¶ 92. As explained previously, we affirm the circuit court's conclusion that the 5.7 minutes spent per day donning and doffing the required clothing and equipment is integral and indispensable to the employees' principal work activities.
¶ 93. We do not affirm the circuit court's declaration that the required donning and doffing of clothing and equipment to leave the Hormel plant during the 30-minute meal periods denied employees a bona fide 30-minute meal period in violation of Wisconsin law. We accept the $15,000 damage award because the parties accepted it and have not disputed it in this court.[46]
¶ 94. The circuit court's awarding $15,000 based on the parties' stipulation appears to be an attempt by the circuit court and the parties to efficiently resolve this dispute without a definitive ruling on the meal period. The parties were trying to limit the issues and expedite the trial on the issue of donning and doffing the Hormel-required clothing and equipment at the beginning and end of the day. In the absence of evidence and argument, we, like the circuit court, will not disturb the $15,000 accommodation between the parties.
*162 V
¶ 95. Having determined that the donning and doffing at the beginning and end of the day is integral and indispensable to the employees' principal activities in producing food products, we next address whether this time is non-compensable under the doctrine of de minimis non curat lex (the law does not concern itself with trifles).
¶ 96. The circuit court and Hormel viewed Hormel as having the burden of proof on the issue of the de minimis non curat lex doctrine. The circuit court determined that "Hormel has failed to carry its burden to show the applicability of the de minimis doctrine, and, therefore, that doctrine is not controlling (assuming it exists at all in Wisconsin law)."
¶ 97. The de minimis non curat lex doctrine "permits employers to disregard . . . otherwise com-pensable work '[w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours.' " Singh v. City of New York, 524 F.3d 361, 370 (2d Cir. 2008) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 692 (1946)).[47]
¶ 98. Assuming, without deciding, that the de minimis doctrine is applicable to claims under Wis. Admin. Code § DWD 272.12, we conclude that in the instant case, the de minimis doctrine does not bar *163 compensation for the time spent donning and doffing the required clothing and equipment because the time spent donning and doffing is not a "trifle."
¶ 99. Although the de minimis non curat lex doctrine is an established feature of the Federal Fair Labor Standards Act,[48] no Wisconsin cases, statutes, or regulations state that the de minimis doctrine applies to Wisconsin DWD regulations or in employment disputes. Wisconsin courts have, however, applied the doctrine in other unrelated contexts. See, e.g., Town of Delevan v. City of Delevan, 176 Wis. 2d 516, 532, 500 N.W.2d 268 (1993) (annexation); Waupaca Cnty. v. Bax, No. 2009AP1406, unpublished slip op. (Wis. Ct. App. Jan. 28, 2010) (zoning).
¶ 100. Despite the lack of Wisconsin case law or state statutory guidance with regard to the de minimis doctrine in the instant case, a review of federal case law assists in reaching our conclusions.
¶ 101. As Hormel noted, the United States Supreme Court first applied the maxim of de minimis non curat lex as a possible defense to disputes originating under the Federal Labor Standards Act in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946). The United States Supreme Court stated that overtime compensation that concerns "only a few seconds or minutes of work" may be disregarded as de minimis, reasoning that " [s]plit-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act." Anderson, 328 U.S. at 692. The de minimis doctrine appears in the federal regulations. See 29 C.F.R. § 785.47. In contrast *164 to federal law, the de minimis doctrine has no explicit basis in the Wisconsin statutes or Wisconsin regulations in the instant case.
¶ 102. In the instant case, employees spend approximately 24 hours per year donning and doffing. Viewed in light of the employees' hourly rate of $22 per hour, the unpaid period in question may amount to over $500 per year for each employee and substantial sums for Hormel. We agree with the circuit court that in the instant case this time is not a "trifle."
¶ 103. Hormel's primary reliance on Mitchell v. JCG Industries, Inc., 745 F.3d 837 (7th Cir. 2014), is misplaced. In Mitchell, the Seventh Circuit held the de minimis doctrine applicable to donning and doffing during a meal break. Mitchell, 745 F.3d at 841-42. After discussing the parties' disagreement regarding the amount of time spent donning and doffing equipment, the federal court of appeals quoted the Supreme Court in Sandifer v. U.S. Steel Corp., 134 S. Ct. 870, 881 (2014), that "it is most unlikely Congress meant § 203(o) to convert federal judges into time-study professionals." Mitchell, 745 F.3d at 843 (quoting Sandifer, 134 S. Ct. at 881). Thus, the Seventh Circuit held that under the de minimis doctrine, it was better to leave to collective bargaining, rather than judicial determination, the issue of how much time was spent donning and doffing equipment on different days. Mitchell, 745 F.3d at 843.
f 104. Here, Hormel and the Union stipulated to the donning and doffing period in question at the beginning and end of the day: 5.7 minutes per day, 28.5 minutes per week, approximately 24 hours per year. As a result, in the instant case the court need not be a "time-study professional" to determine the time spent donning and doffing the clothing and equipment.
*165 ¶ 105. Assuming, without deciding, that the de minimis doctrine applies to claims arising under Wis. Admin. Code § DWD 272.12, the de minimis doctrine does not bar compensation for the time spent donning and doffing the required clothing and equipment at the beginning and end of the day because the time spent donning and doffing is not a "trifle." The donning and doffing of the clothing and equipment at the beginning and end of the day is integral and indispensable to the employees' principal activity — to successfully and sanitarily produce Hormel's products. Viewed in the aggregate, this time amounts to over $500 per year for each employee, a figure that is certainly significant to an employee and to Hormel. Accordingly, we conclude that the period spent donning and doffing at the beginning and end of the day is compensable under Wis. Admin. Code § DWD 272.12 and affirm the judgment and order of the circuit court.
¶ 106. For the reasons set forth, we conclude:
(1) Wisconsin Admin. Code § DWD 272.12 requires Hormel to compensate its employees for the 5.7 minutes per day spent donning and doffing the clothing and equipment at the beginning and end of the day. Relying on Tyson Foods, 350 Wis. 2d 380, as did the circuit court, we conclude, as did the circuit court, that the employees' donning and doffing clothing and equipment at the beginning and end of the day brought Hormel into compliance with federal food and safety regulations and was integral to sanitation and safety in the employees' principal activities, namely food production.
(2) The required donning and doffing of clothing and equipment at the beginning and end of *166 the day does not fall within the doctrine of de minimis non curat lex. The wages involved are not a "trifle" either for the employees or Hormel.
By the Court. -The judgment and order of the circuit court is affirmed.
¶ 107. REBECCA G. BRADLEY, J., did not participate.

 Dennis A. Warne, Charles R. Seeley, and Pamela Collins join as plaintiffs. We refer only to the Union as the plaintiff for simplicity.

 All subsequent references to the Wisconsin statutes are to the 2013-14 version unless otherwise indicated.

 All subsequent references to the Wisconsin Administrative Code are to the February 2009 register date unless otherwise noted.

 The court granted review in the Tyson Foods case. See Weissman v. Tyson Prepared Foods, Inc., 2013 WI App 109, 350 Wis. 2d 380, 838 N.W.2d 502, review granted, 2014 WI 3, 352 Wis. 2d 351, 842 N.W.2d 359. The review was dismissed prior to argument or a decision by this court, however, when the parties settled the litigation.

 The shoes must be kept at the facility and are called "captive shoes."

 This stipulation includes not just the time spent donning and doffing the required clothing and equipment, but also time spent washing hands and walking to and from workstations. Nonetheless, under Wis. Admin. Code § DWD 272.12(l)(a)2., the "workday" is defined as "the period between 'the time on any particular workday at which such employee commences their principal activity or activities' and 'the time on any particular workday at which they cease such principal activity or activities.'"
Because we hold that donning and doffing the required clothing and equipment at the beginning and end of the day is integral and indispensable to the employees' principal work activity of food preparation, the donning and doffing is itself a principal work activity. See IBP, Inc. v. Alvarez, 546 U.S. 21, 37 (2005) ("[W]e hold that any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity As a result, the time spent walking to or from workstations or washing hands occurs after the employees' "workday" begins and is thus compensable. See IBP, 546 U.S. at 37 ("Moreover, during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is .. . covered by the FLSA.").

 See Laurie E. Leader, Wages and Hours: Law & Practice § 6.03[7], at 6-30 (2015).

 In the circuit court, the parties also disagreed about the burden of proof. The Union argued that it would have the burden of proof to demonstrate that the acts at issue are *144 "work," and the burden would then shift to Hormel to demonstrate that the acts are noncompensable. Hormel disagreed with the Union's description of the burden of proof, although Hormel agreed that it had the burden of proof on the application of the de minimis doctrine.
The circuit court stated that the (undefined) burdens of proof were on the respective parties by the greater weight of the credible evidence. The circuit court viewed Hormel as having the burden of proof on the application of the de minimis doctrine.
In this court, neither party raises the issue of the allocation of the burdens of proof. As a result, we do not address the issue. See State v. Gracia, 2013 WI 15, ¶ 28 n.13, 345 Wis. 2d 488, 826 N.W.2d 87 (stating "we do not usually address undeveloped arguments"). Regardless of the allocation of the burdens of proof, we conclude the circuit court's decision was correct.

 Wisconsin Admin. Code § DWD 272.12, titled "Interpretation of hours worked," states in (l)(a)l.:
*145 (1) Principles for determination of hours worked, (a) General requirements of sections. 1. Employees subject to the statutes must be paid for all time spent in "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer's business." The workweek ordinarily includes "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place."

 Wisconsin Admin. Code § DWD 272.12(l)(a)2. states:
'Workday,' in general, means the period between 'the time on any particular workday at which such employee commences their principal activity or activities' and 'the time on any particular workday at which they cease such principal activity or activities.' The 'workday' may thus be longer than the employee's scheduled shift, hours, tour of duty, or time on the production line. Also, its duration may vary from day to day depending upon when the employee commences or ceases their 'principal' activities (emphasis added).

 See Wis. Admin. Code § DWD 272.12(2)(e)c. (emphasis added).

 See Tyson Foods, 350 Wis. 2d 380, f 26.

 This Wisconsin regulation is substantially similar to federal regulations addressing the phrase "principal activity or activities." Compare Wis. Admin. Code § DWD 272.12(2)(e) with 29 C.F.R. § 785.24 and 29 C.F.R. § 790.8(b)-(c). Specifically, the federal regulations provide the exact same three examples that § DWD 272.12(2)(e) provides to clarify when an activity is an "integral part of a principal activity" for which employees must receive compensation.
The history and purposes of the Fair Labor Standards Act, federal regulations, Wisconsin law and regulations, and case law interpreting the statutes and regulations are set forth at length in prior cases and need not be repeated here. See, e.g., Integrity Staffing Solutions, Inc. v. Busk, 135 S. Ct. 513, 516-18 (2014); Sandifer v. U.S. Steel Corp., 134 S. Ct. 870, 875-76 (2014); Tyson Foods, 350 Wis. 2d 380, passim.

 Tyson Foods, 350 Wis. 2d 380, ¶ 4.

 Tyson Foods, 350 Wis. 2d 380, ¶ 4.

 The court of appeals concluded that the donning and doffing activities were required and controlled by Tyson Foods and primarily benefited the employer, satisfying the initial inquiry. Tyson Foods, 350 Wis. 2d 380, ¶¶ 17, 22.

 Tyson Foods, 350 Wis. 2d 380, ¶¶ 17, 23.

 Tyson Foods, 350 Wis. 2d 380, ¶ 23.

 Tyson Foods, 350 Wis. 2d 380, ¶¶ 26, 28-29, 32, 37.

 Tyson Foods, 350 Wis. 2d 380, ¶ 32.

 Tyson Foods, 350 Wis. 2d 380, ¶ 28.

 Tyson Foods, 350 Wis. 2d 380, ¶ 4.

 Tyson Foods, 350 Wis. 2d 380, ¶ 36.

 Tyson Foods, 350 Wis. 2d 380, ¶ 31.

 See 29 C.F.R. § 790.8(c).

 Integrity Staffing, 135 S. Ct. at 515.

 Integrity Staffing, 135 S. Ct. at 515.

 Integrity Staffing, 135 S. Ct. at 516.

 Integrity Staffing, 135 S. Ct. at 519.

 Integrity Staffing, 135 S. Ct. at 518.

 Integrity Staffing, 135 S. Ct. at 519.

 In Steiner v. Mitchell, 350 U.S. 247 (1956), the Court held battery plant employees were entitled to compensation for time spent showering and changing clothes because of the toxic chemicals in the plant were "indispensable to the performance of their productive work and integrally related thereto." Steiner, 350 U.S. at 249, 251. In a different case, the Court held that meatpacker employees were entitled to compensation for time spent sharpening their knives. See Mitchell v. King Packing Co., 350 U.S. 260, 262-63 (1956). Conversely, in a third case, the Supreme Court held the time spent waiting by poultry plant employees to don protective equipment was noncompensable because "such waiting. . . was two steps removed from the productive activity on the assembly line IBP, Inc. v. Alvarez, 546 U.S. 21, 42 (2005) (emphasis added).

 Integrity Staffing, 135 S. Ct. at 519 ("[A]n activity is integral and indispensable to the principal activities ... if it is an intrinsic element. .. with which the employee cannot dispense if he is to perform his principal activities."); Tyson Foods, 350 Wis. 2d 380, ¶ 26 ("An integral part of a principal activity includes ... an activity that is ... indispensable to its performance.").

 Sandifer, 134 S. Ct. at 874.

 Sandifer, 134 S. Ct. at 874.

 29 U.S.C. § 203(o) (emphasis added).

 Sandifer, 134 S. Ct. at 874.

 Sandifer, 134 S. Ct. at 877 (quoting Steiner v. Mitchell, 350 U.S. 247, 256 (1956)).

 Sandifer, 134 S. Ct. at 876 (quoting Sandifer v. U.S. Steel Corp., 678 F.3d 590, 596 (7th Cir. 2012)).

 Sandifer, 134 S. Ct. at 876-79.

 Sandifer, 134 S. Ct. at 879.

 Although the concurrence/dissent concludes that the unpaid meal periods are not compensable, the concurrence/dissent cites only one of these regulations, Wis. Admin. Code § DWD 274.02(3). See concurrence/dissent, ¶ 119 n.8. Instead, the concurrence/dissent analyzes whether leaving the facility during a meal period is a "principal activity" under Wis. Admin. Code § DWD 272.12(2)(e). See concurrence/dissent, ¶¶ 122-124.
The "principal activity" analysis under Wis. Admin. Code § DWD 272.12(2)(e) applies to ” [preparatory and concluding activities." Meal periods are not generally viewed as " [preparatory and concluding activities."

 The Union argued that because Hormel's work rules required the employees to don and doff their clothing and equipment to leave the facility during their meal periods, the vast majority of employees chose to remain on site during their meal periods. The circuit court referred to this as the Union's "chilling effect" argument, and concluded it was unsupported by any credible evidence. If the circuit court had accepted the Union's "chilling effect" argument, damages would have been about $1.5 million.

 See concurrence/dissent, ¶ 119.

 Concurrence/dissent, ¶ 120.

 See Maurin v. Hall, 2004 WI 100, ¶ 120, 274 Wis. 2d 28, 682 N.W.2d 866 (Abrahamson, C.J., & Crooks, J., concurring) ("The rule of law is generally best developed when matters are tested by the fire of adversarial briefs and oral argument), overruled on other grounds by Bartholomew v. Wis. Patients Comp. Fund, 2006 WI 91, 293 Wis. 2d 38, 717 N.W.2d 216

 The Sandifer court remarked (in the context of 29 U.S.C. § 209(o)) that" [a] de minimis doctrine does not fit comfortably within the statute at issue here, which, it can fairly be said, is all about trifles — the relatively insignificant periods of time in which employees wash up and put on various items of clothing needed for their jobs." Sandifer, 134 S. Ct. at 880.

 Tyson Foods, 350 Wis. 2d 380, ¶ 51.