**2025 WI 24**

# Supreme Court of Wisconsin



NICOLE MCDANIEL, et al.,
*Plaintiffs-Respondents-Petitioners,*

*v.*

WISCONSIN DEPARTMENT OF CORRECTIONS,
*Defendant-Appellant.*

No. 2022AP1759
Decided June 24, 2025

REVIEW of a decision of the Court of Appeals
Milwaukee County Circuit Court (Glenn H. Yamahiro, J.)
No. 2020CV4571

PROTASIEWICZ, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, C.J., DALLET, HAGEDORN, and KAROFSKY, JJ., joined. ZIEGLER, J., filed an opinion concurring in part and dissenting in part, in which REBECCA GRASSL BRADLEY, J., joined.

¶1      JANET C. PROTASIEWICZ, J.   In this class action, Department of Corrections (DOC) officers allege that they are owed compensation for time spent in correctional facilities before and after their shifts. At this stage, two corrections officers[1] seek certification for a class of officers. The

---

[1] The two officers are Nicole McDaniel and Matthew Davis. We refer to them collectively as "McDaniel." David Smith is also a named plaintiff, but does not seek appointment as a class representative.

circuit court certified the class, but the court of appeals reversed because—in its view—the class would lose on the merits.

¶2    The parties offer conflicting visions of a court's role in class certification. Specifically, they disagree on whether a court should consider the merits of the underlying claim when assessing the class-certification requirements of commonality and typicality. We clarify that a court should not consider the viability of the class's claim on the merits when addressing commonality and typicality. Accordingly, we determine that the circuit court did not erroneously exercise its discretion in certifying the class, and we reverse the court of appeals.

## I.  BACKGROUND

¶3    The Wisconsin Department of Corrections employs corrections officers and sergeants at prisons around the state. The DOC employs these officers to supervise prison inmates and maintain the security of prisons.

¶4    The DOC pays officers for shifts covering the time spent at post. It requires that officers complete activities before and after they arrive at their post, and, by policy, it does not pay the officers for that time. Pre-shift activities include: passing bags through X-ray machines; reporting to a supervisor to receive a daily posting and submit to visual inspection; proceeding through the prison, including clearing secured gates and sally ports; and obtaining equipment like keys, radios, and pepper spray. Post-shift activities include: waiting, if necessary, for incoming staff to relieve officers from their posts; providing shift-change briefing to incoming staff; proceeding out of the prison, including clearing secured gates and sally ports; and returning equipment.

¶5    McDaniel presents evidence that while completing these activities—indeed, at all times while in the prisons—the officers must remain vigilant and may need to respond to emergency situations. The DOC says officers are entitled to compensation if they respond to an emergency before or after their shift.

¶6    The DOC employs approximately 5,000 corrections officers at 37 prisons across the state. Though officers at every institution must complete pre- and post-shift activities, not all officers complete the same activities in the same order or take the same amount of time. Some officers

may spend a couple of minutes per day completing these activities, while others spend the better part of an hour.

¶7 McDaniel brought a class-action suit against the DOC, seeking compensation for pre- and post-shift activities and declaratory relief. She contends that the pre- and post-shift activities are "integral and indispensable" to a correctional officer's principal activities, and thus are compensable under Wisconsin regulations. *See* Wɪs. Aᴅᴍɪɴ. Cᴏᴅᴇ DWD § 272.12(2)(e) (Nov. 2022); *United Food & Com. Workers Union, Loc. 1473 v. Hormel Foods Corp.*, 2016 WI 13, ¶71, 367 Wis. 2d 131, 876 N.W.2d 99 (lead op.) (citing the "integral and indispensable" standard from *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 33 (2014)).

¶8 McDaniel argues that officers should be compensated for all time spent in the prisons. She says that officers should be paid for being vigilant, and they must remain vigilant at all times in the prisons. She also cites the "continuous workday" rule, under which a paid workday runs from an employee's first principal activity to her last principal activity. *See* Wɪs. Aᴅᴍɪɴ. Cᴏᴅᴇ DWD § 272.12(1)(a)2. (Nov. 2022); 29 C.F.R. § 790.6(b) (2024). She argues that under the continuous workday rule, remaining vigilant or some other pre- and post-shift activity start and end the workday and encapsulate all time in the prisons.

¶9 The circuit court split the proceedings into a class-certification phase and a merits phase. The parties completed discovery in preparation for class certification.

¶10 Now, McDaniel seeks certification of a class of prison staff, specifically:

> All current and former non-exempt, hourly-paid [DOC] employees who worked as security personnel in a correctional institution (including but not limited to Correctional Officers and Correctional Sergeants) in the State of Wisconsin at any time during the period starting two

years before this action commenced through the date of judgment ("the Class Period").[2]

McDaniel argues that the class meets the statutory requirements of numerosity, commonality, typicality, adequacy of representation, predominance, and superiority. *See* WIS. STAT. § 803.08(1)(a)–(d), (2)(c) (2021–22).[3]

¶11    Two named plaintiffs—Nicole McDaniel and Matthew Davis—request appointment as class representatives. Nicole McDaniel was a correctional officer at a maximum security prison. Matthew Davis is a transportation officer at a correctional mental health care center. In their depositions, both officers said they were required to complete pre- and post-shift activities. They also explained that they were trained to be vigilant and respond to emergencies while in their prisons, even outside of their shifts.

¶12    McDaniel presents an expert who proposes a method to calculate damages. The expert—Dr. William Rogers—and his team would review security footage to determine when officers enter and leave the prison facilities. The team would calculate the time officers spend in the prisons before and after their shifts by comparing the officers' arrival and departure times with the beginning and end of their shifts. If the team found significant differences between facilities, they would perform separate analyses by institution.

¶13    The circuit court granted McDaniel's motion for class certification. It determined that she made a "plausible" argument that the officers are entitled to compensation for the pre- and post-shift activities. It also determined that the class met the requirements for class certification in WIS. STAT. § 803.08(1)(a)–(d) and (2)(c). In its decision, the court focused on the requirements of predominance and superiority under § 803.08(2)(c), saying that the other requirements were not in dispute.

---

[2] The class excludes DOC "executives, secretaries, or directors; judicial officers and their immediate family members; [and] Court staff assigned to this case."

[3] All subsequent references to the Wisconsin Statutes are to the 2021–22 version.

¶14     The court of appeals reversed, holding that the class was improperly certified. *See McDaniel v. Wis. Dep't of Corr.*, No. 2022AP1759, unpublished slip op. (Wis. Ct. App. May 15, 2024) (per curiam). The court focused on the overlap between the merits and the requirements of commonality and typicality. It said "a consideration of the merits of this case cannot be separated from the preliminary procedural question concerning certification of the proposed class action." *Id.*, ¶15. And it reviewed whether McDaniel's claims for compensation "remain viable" under substantive law. *Id.* In that substantive analysis, the court of appeals determined that the employees' pre- and post-shift activities "are not compensable." *Id.*, ¶16. Therefore, the court said that the class-certification requirements of commonality and typicality were not met. *Id.*, ¶17. The court noted that although McDaniel had proposed questions common to the class about compensation, those questions were not enough for commonality because, in its view, the activities were not compensable. *See id.*, ¶¶16–17.

## II.  STANDARD OF REVIEW

¶15     A circuit court has "broad discretion" to determine whether class certification is appropriate. *Hammetter v. Verisma Sys., Inc.*, 2021 WI App 53, ¶9, 399 Wis. 2d 211, 963 N.W.2d 874 (citing *Harwood v. Wheaton Franciscan Servs., Inc.*, 2019 WI App 53, ¶¶5, 41, 388 Wis. 2d 546, 933 N.W.2d 654). As such, we overturn a circuit court's certification decision only for an erroneous exercise of discretion. *Id.* We uphold a circuit court's discretionary decision if it "examined the relevant facts, applied a proper standard of law, and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach." *Wis. Prop. Tax Consultants, Inc. v. DOR*, 2022 WI 51, ¶10, 402 Wis. 2d 653, 976 N.W.2d 482 (quoting another source). When a court's discretionary decision involves a question of law, we review the question of law independently of the determination of the circuit court and court of appeals. *State v. Allen*, 2017 WI 7, ¶17, 373 Wis. 2d 98, 890 N.W.2d 245.

## III.  ANALYSIS

¶16     We determine that the circuit court did not erroneously exercise its discretion in certifying the class.

¶17     A party seeking class certification bears the burden to prove the requirements in Wɪs. Sᴛᴀᴛ. § 803.08(1) and (2) by a preponderance of the evidence. *Fotusky v. ProHealth Care, Inc.*, 2023 WI App 19, ¶11, 407

Wis. 2d 554, 991 N.W.2d 502. The party must show that a class meets all four criteria in § 803.08(1)(a)–(d): numerosity, commonality, typicality, and adequacy of representation. Additionally, the party must show that the class meets one of the requirements in § 803.08(2). Here, McDaniel relies on paragraph (c) of § 803.08(2) which requires a showing of predominance and superiority.

¶18    Wisconsin's class certification statute is nearly identical to the federal rule. *Compare* § 803.08(1)–(2), *with* Fᴇᴅ. R. Cɪᴠ. P. 23(a)–(b). As such, we look to federal case law for guidance on Wisconsin's class certification law. *Harwood*, 388 Wis. 2d 546, ¶5.[4]

¶19    The parties do not dispute that the statutory requirements of numerosity and adequacy of representation are met. *See* § 803.08(1)(a), (d). So, we address only commonality, typicality, predominance, and superiority. *See* § 803.08(1)(b)–(c), (2)(c).

## A. Cᴏᴍᴍᴏɴᴀʟɪᴛʏ

¶20    Under the commonality requirement, a class must show that "[t]here are questions of law or fact common to the class." Wɪs. Sᴛᴀᴛ. § 803.08(1)(b). Even one common question is enough. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). The common question must be "capable of classwide resolution," which means that answering the question "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. A court may consider whether the question tees up "common *answers* apt to drive the resolution of the litigation" and whether "[d]issimilarities . . . have the potential to impede the generation of common answers." *Id.* (quoting another source).

### 1. Commonality and the Merits

¶21    The parties disagree about the nature of the court's inquiry under the commonality requirement. This presents a question of law that

---

[4] In 2017, we recreated Wɪs. Sᴛᴀᴛ. § 803.08 to "craft a Wisconsin class action rule that tracks as closely as possible federal practice so that Wisconsin courts and practitioners can look to the well-developed body of federal case law interpreting Rule 23 for guidance." Judicial Council Committee Note, 2017, Wɪs. Sᴛᴀᴛ. § 803.08.

we review independently of the determination of the circuit court and court of appeals. *See Allen*, 373 Wis. 2d 98, ¶17.

¶22 The DOC argues that a court must look at the merits when determining whether commonality is met. The DOC relies on *Dukes*. In that case, the Supreme Court considered whether a group of Wal-Mart employees had shown commonality. *Dukes*, 564 U.S. at 349. The employees argued that they met commonality by presenting evidence that Wal-Mart engaged in a "pattern or practice" of gender-based discrimination in violation of Title VII. *Id.* at 346, 352. But the Supreme Court held that commonality was not met because there was "no convincing proof of a companywide discriminatory pay and promotion policy." *Id.* at 359.

¶23 The DOC highlights the *Dukes* Court's approach to the merits. Specifically, the Court said a "rigorous analysis" of the class-certification requirements will frequently "entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351. It also said the class-certification decision "generally involves considerations that are enmeshed in the factual and legal issues." *Id.* (quoting another source).

¶24 By contrast, McDaniel argues that a court should not consider the merits when addressing commonality. She cites the Supreme Court's approach in *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013). In *Amgen*, the Supreme Court addressed the interplay of the merits and the class-certification predominance requirement. *Id.* at 460.[5] At issue was whether the class needed to prove materiality—a component of the underlying securities-fraud claim—to show that a common question existed and predominated over other issues. *Id.* at 467. The Court held that the class did not need to prove materiality in order to meet the predominance requirement. *Id.* at 470.

¶25 McDaniel cites *Amgen*'s holding that a court has "no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at

---

[5] The predominance requirement is related to commonality. Commonality requires that a common question exists, while predominance requires that the common question predominates over individual issues. *See* WIS. STAT. § 803.08(1)(b), (2)(c); 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1763 (4th ed. 2021) (saying that a common question is "an essential ingredient" of predominance).

466. The Court held that "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the [federal rule's] prerequisites for class certification are satisfied." *Id.* And it said an "evaluation of the probable outcome on the merits is not properly part of the certification decision." *Id.* (quoting Fᴇᴅ. R. Cɪᴠ. P. 23(c)(1)(A), advisory committee's note to 2003 amendment).

¶26　We follow the *Amgen* approach. When a class-certification court assesses commonality, it should not consider the viability of the class's claim on the merits.

¶27　We do not read *Dukes* to require an assessment of the viability of the class's claim on the merits, especially in light of *Amgen*. While *Dukes* says that a "rigorous" class-certification analysis may involve "overlap" with the merits, it does not follow that courts may analyze the *viability* of the merits claim. In fact, in *Amgen*, the Supreme Court explicitly limited the "rigorous" analysis: "Although . . . a court's class-certification analysis must be 'rigorous' . . . [the federal rule] grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 568 U.S. at 465–66 (quoting *Dukes*, 564 U.S. at 351).[6]

¶28　We see the "overlap" between the merits and commonality as more limited than the DOC suggests. A court may need to consider the underlying legal claims and evidence to determine whether a common legal question exists. *See Dukes*, 564 U.S. at 350. However, there is a difference between identifying whether a common question exists and deciding its answer. *See Amgen*, 568 U.S. at 459 (holding that predominance "requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class"). A court "must walk a balance between *evaluating* evidence to determine whether a common question exists and predominates, *without weighing* that evidence to determine whether the

---

[6] This case is also different than *Dukes* in important ways. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In *Dukes*, the plaintiffs relied on a theory that there was pattern or practice of discrimination. *Id.* at 352. Thus, to establish commonality, they needed to show "proof of a companywide discriminatory pay and promotion policy." *See id.* at 359. But here, McDaniel does not rely on a pattern-or-practice argument, and regardless, the DOC's state-wide compensation policy applies to the whole class.

plaintiff class will ultimately prevail on the merits." *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 341 (7th Cir. 2023) (quoting another source).

¶29 Our approach properly situates class certification within our rules of civil procedure. Those rules already give parties a mechanism to seek a decision on the merits following discovery and before trial—summary judgment. *See* WIS. STAT. § 802.08. A party opposing certification should not be able to shoehorn class certification into another opportunity to win on the merits, especially because class-certification standards are not tailored toward merits determinations.[7] Instead, the party should make those arguments under procedures designed for merits determinations and with the benefit of discovery on the merits. As the Supreme Court said, merits arguments are "properly addressed at trial or in a ruling on a summary-judgment motion," not during class certification. *Amgen*, 568 U.S. at 470; *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 457 (2016).

¶30 Our decision today puts us in line with the federal courts. The Supreme Court, even after *Dukes*, held that "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the . . . prerequisites for class certification are satisfied." *Amgen*, 568 U.S. at 466. The Seventh Circuit put it plainly: "The chance, even the certainty, that a class will lose on the merits does not prevent its certification." *Schleicher v. Wendt*, 618 F.3d 679, 687 (7th Cir. 2010); *see also Eddlemon*, 65 F.4th 338 (saying that if a class meets the certification requirements, it "*must* be certified, even if it is sure to fail on the merits"); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) ("[A] court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits."). Federal

---

[7] Summary judgment differs from class certification in meaningful ways, including the applicable burden, availability of appellate review, and standard of appellate review. *See Cent. Corp. v. Rsch. Prods. Corp.*, 2004 WI 76, ¶¶18–19, 272 Wis. 2d 561, 681 N.W.2d 178 (a summary judgment burden "is on the moving party to prove that there are no genuine issues of material fact"); *State Farm Mut. Auto. Ins. Co. v. Langridge*, 2004 WI 113, ¶12, 275 Wis. 2d 35, 683 N.W.2d 75 (summary judgment decisions are reviewed independently of the decision of the circuit court and court of appeals). *Compare* WIS. STAT. § 803.08(11)(b) ("An appellate court shall hear an appeal of an order granting or denying class action certification . . . ."), *with* § 808.03(1) (governing appeals as of right for summary judgment decisions).

circuit courts generally limit merits inquiries "to those necessary and relevant to a [class-certification] requirement" and "caution[] against turning the class certification stage into a minitrial on the merits." 3 WILLIAM B. RUBENSTEIN, NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 7:23 (6th ed., 2022); *see id.* ("The combination of *Wal-Mart* and *Amgen* essentially affirms this approach . . . .").

¶31 Because we determine that a class-certification court should not assess the viability of the class's claim on the merits, we disagree with the court of appeals. The court of appeals said a "consideration of the merits . . . cannot be separated from" the class certification decision. *McDaniel*, No. 2022AP1759, at ¶15. And it ultimately determined that commonality was not met because, although McDaniel posed a common question, the question would be decided against McDaniel on the merits. *Id.*, ¶¶16–17. That analysis improperly probed the viability of the class's claim on the merits.

¶32 We also disagree with the circuit court's analysis regarding whether McDaniel's merits claim was "plausible." That analysis likewise improperly assessed the viability on the merits. However, the circuit court also ruled on the statutory class-certification requirements, and, as we analyze below, the circuit court did not erroneously exercise its discretion in assessing those factors.

### 2. *Commonality in This Case*

¶33 Having established the nature of our inquiry, we turn to commonality in this case.

¶34 McDaniel says she has presented a common question regarding compensability: "[I]s the officers' pre- and post-shift work sufficiently 'integral and indispensable' to the shift work to be compensable?" *See Hormel*, 367 Wis. 2d 131, ¶71 (laying out the "integral and indispensable" standard). The DOC says that is not a common question, either because the question would be resolved against McDaniel on the merits or because there are too many differences between officers. The circuit court determined that McDaniel met her burden to show commonality.

¶35 The circuit court's commonality decision was reasonable. McDaniel presents a common question: whether the time officers spend in the prisons before and after their shifts is compensable. Answering the

compensability question will "resolve an issue that is central to" the DOC's liability "in one stroke." *See Dukes*, 564 U.S. at 350. Even one common question is enough for commonality. *See id.* at 359. Thus, a reasonable court could determine that commonality is met.

¶36 We are not persuaded by the DOC's arguments that commonality is not met. First, the DOC argues that there is no common question because the question of compensability will be resolved against McDaniel on the merits. It maintains that the specific pre- and post-shift activities of undergoing security screenings and walking to post are not compensable because they are not "integral and indispensable" to principal activities. *See Integrity Staffing*, 574 U.S. at 35 (holding that security screenings at Amazon warehouses are not compensable); Wıs. ADMIN. CODE DWD § 272.12(2)(g) (Nov. 2022) ("Normal travel from home to work is not work time."). It also argues that the officers should not be compensated for being vigilant.

¶37 But the DOC's arguments regarding compensability belong in a motion for summary judgment or at trial. *See Amgen*, 568 U.S. at 470. As we explained above, our role at this stage is not to determine the viability of the class's claim on the merits. *See id.* at 466. We need not—and do not—opine on whether McDaniel is right about compensability. What matters here is that a common question exists, not what its answer is.

¶38 Second, the DOC argues that no common question exists because compensability for a given activity may vary from officer to officer. The DOC notes that the class would include thousands of individual officers who have a variety of postings across 37 prisons and who complete pre- and post-shift activities in different orders.

¶39 We disagree for two reasons. First, McDaniel does not rely on an officer-by-officer, activity-by-activity analysis. She has argued that the DOC should pay officers for all time in the prisons because officers must remain vigilant at all times while in the prisons. Alternatively, she has argued that the officers' "continuous workday" begins and ends with an activity common to all officers and encapsulates all time in the prisons. Those theories do not require analyzing whether each officer should be compensated for each activity. Second, even to the extent a more individualized analysis is required, it is not enough to defeat commonality. The record indicates that thousands of officers are employed in the same role and complete the same activities. In the face of that commonality, class proceedings can still "generate common *answers*

apt to drive the resolution of the litigation" for large swaths of officers. *See Dukes*, 564 U.S. at 350 (quoting another source).[8]

¶40    Ultimately, the circuit court determined that McDaniel met her burden to show commonality. It established the legal standard, examined the facts, and came to a reasonable conclusion. Thus, the circuit court did not erroneously exercise its discretion in determining that commonality is met.

## B. Tʏᴘɪᴄᴀʟɪᴛʏ

¶41    Under the typicality requirement, a class must show that "[t]he claims or defenses of the representative parties are typical of the claims or defenses of the class." Wɪѕ. Sᴛᴀᴛ. § 803.08(1)(c). A representative's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." *Lacy v. Cook Cnty.*, 897 F.3d 847, 866 (7th Cir. 2018) (quoting another source).

¶42    There is no dispute that the claims of the two class representatives here arise from the same course of conduct as other class members and are based on the same legal theory. *See id.* (laying out the typicality standard).

¶43    Instead, the DOC argues that we should look at the merits, and typicality is not met because McDaniel's claims would fail on the merits. But—for all the reasons we mentioned when addressing commonality—we do not look at the viability of the class's claim on the merits when assessing typicality. *See Amgen*, 568 U.S. at 466 ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision." (quoting another source)).

¶44    The circuit court determined that McDaniel met her burden to show typicality. It established the legal standard, examined the facts, and came to a reasonable conclusion. Thus, the circuit court did not erroneously exercise its discretion in determining that typicality is met.

---

[8] This is especially true given the availability of subclasses under Wɪѕ. Sᴛᴀᴛ. § 803.08(7).

## C. PREDOMINANCE AND SUPERIORITY

¶45    Under WIS. STAT. § 803.08(2)(c), a class must show predominance and superiority. The statute provides four factors for the court to consider. *See* § 803.08(2)(c)1.–4. In full, § 803.08(2)(c) requires that:

> the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include all of the following:
>
> 1. The class members' interests in individually controlling the prosecution or defense of separate actions.
>
> 2. The extent and nature of any litigation concerning the controversy already begun by or against class members.
>
> 3. The desirability or undesirability of concentrating the litigation of the claims in the particular forum.
>
> 4. The likely difficulties in managing a class action.

### 1. Predominance

¶46    When analyzing predominance, a court must ask whether "common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Bouaphakeo*, 577 U.S. at 453 (quoting another source). To do so, a court must determine whether issues are common or individual. Individual issues require evidence that varies from member to member, while common issues can be resolved with the same evidence for each member. *Id.*

¶47    Individualized damages do not defeat predominance. Indeed, "[i]t is well established that the presence of individualized questions regarding damages does not prevent certification." *Messner*, 699 F.3d at 815. Predominance may be met "even though other important matters will have to be tried separately, such as damages." *See Bouaphakeo*, 577 U.S. at 453 (quoting 7AA CHARLES ALAN WRIGHT, ARTHUR R. MILLER &

MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1778 (3d ed. 2005) ("WRIGHT & MILLER")).

¶48    Here, McDaniel argues that predominance is met because the common question of compensability predominates over any individualized questions. The DOC argues that individual questions predominate. It points to two individual issues that it says undermine class-wide resolution: damage calculations and the applicability of the de minimis doctrine.[9] The circuit court determined that McDaniel met her burden to show predominance.

¶49    The circuit court's predominance decision was reasonable. A reasonable court could determine that compensability is a common question that predominates over individual issues.

¶50    To begin, the compensability question is common. The circuit court said that "all members of the class are subject to the same policy" and that there is "a similar baseline of facts for each class member." Indeed, the record shows that the compensation policies apply to the whole class and that officers across all institutions are required to complete pre- and post-shift activities. Further, McDaniel presents evidence that all officers are required to remain vigilant while in the institutions. Thus, the "same evidence" can be used to make a claim for the whole class, and the question is common. *See Bouaphakeo*, 577 U.S. at 453.

¶51    And the circuit court reasonably determined that the individual issues of damages and the de minimis doctrine do not predominate over the common question of compensability. We are not persuaded by the DOC's arguments otherwise.

¶52    First, we address damages. The DOC says that McDaniel's expert cannot calculate damages class-wide, because he cannot determine how much time any one officer spends on individual pre- and post-shift activities. The DOC cites the Supreme Court's statement that

---

[9] Under the de minimis doctrine, an employer need not pay employees for otherwise compensable activity if the time spent on the activity is sufficiently small. *See Piper v. Jones Dairy Farm*, 2020 WI 28, ¶¶35–38, 390 Wis. 2d 762, 940 N.W.2d 701 (explaining the rule and assuming it applies under Wisconsin regulations, but holding that 4.3 minutes per day was not de minimis).

representative evidence is permissible "[i]f the sample could have sustained a reasonable jury finding as to hours worked in each employee's individual action." *Id.* at 455.

¶53     But the circuit court rejected this argument. It noted that the Supreme Court has approved the use of similar representative video evidence to calculate damages in a donning and doffing case. *See id.* at 457. And the circuit court concluded that "the methodology employed by [McDaniel's expert] is capable of calculating damages for any member of the class." That conclusion is supported by the expert's proposed method and McDaniel's arguments here. McDaniel argues that officers should be compensated for all time spent in the prisons. The expert's team would review representative security footage from a variety of prisons to determine how long officers spend in the prisons before and after their shifts. Thus, the expert could determine how much time officers spend in the prisons. We also note that another court determined that predominance was met where a state-wide class proposed the same damage methodology by the same expert. *Hodge v. N.C. Dep't of Pub. Safety*, No. 5:19-CV-478-D, 2024 WL 499523, at *7–*8 (E.D.N.C. Feb. 8, 2024).

¶54     The circuit court also said that "a difference in the amount recover[ed] does not mean that a class action cannot proceed." The law supports that conclusion. "[T]he presence of individualized questions regarding damages does not prevent certification" under the predominance requirement. *Messner*, 669 F.3d at 815; *see also Bouaphakeo*, 577 U.S. at 453.

¶55     Second, we consider the de minimis doctrine. The DOC says that arguments about whether the de minimis doctrine applies to some officers predominate over the common question of compensability. But the circuit court determined that "[w]hile the de minimis doctrine could result in dismissal of some members of the class later on, it is not a bar on certification of the class itself." That conclusion is reasonable. If the circuit court determines that time in the prison before and after a shift is compensable, and if the circuit court determines that the de minimis doctrine applies to some class members, then the circuit court has tools available to ensure a fair resolution. *See, e.g.*, WIS. STAT. § 803.08(3)(c) (altering or amending a class certification order); § 803.08(7) (subclasses).

¶56     In sum, the circuit court determined that the common issue of compensability predominates over other issues, including damages and

the de minimis doctrine. That conclusion is reasonable, and the circuit court examined the facts, applied the proper law, and used a demonstrative rational process. Thus, the circuit court did not erroneously exercise its discretion in deciding that predominance was met.

### *2. Superiority*

¶57 Under the superiority requirement, a court must determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." WIS. STAT. § 803.08(2)(c); *see also* WRIGHT & MILLER § 1779 (explaining that a court "consider[s] what other procedures, if any, exist for disposing of the dispute" and then compares those to class action).

¶58 Here, McDaniel argues that class action is superior to any other procedure because a class-action suit is an efficient way to resolve this issue for thousands of officers. The DOC argues that individual wage claims are superior to class action, citing the factors in § 803.08(2)(c)1., 3., and 4.[10] The circuit court rejected the DOC's arguments and determined superiority was met.

¶59 The circuit court's superiority decision was reasonable. A class action is a more fair and efficient way to handle this controversy than individual wage claims. Indeed, each individual officer would face significant cost and effort to navigate a wage claim.

¶60 We are not persuaded by the DOC's arguments that superiority is not met. First, the DOC argues that superiority is not satisfied because the class is unmanageable. *See* § 803.08(2)(c)4.[11] The DOC argues that there may be numerous and burdensome mini-trials on damages. It notes that it is entitled to cross-examination regarding each class member's damages. *See Hermanson v. Wal Mart Stores, Inc.*, 2006 WI App 36, ¶6, 290 Wis. 2d 225, 711 N.W.2d 694 (warning that the defendant could "examin[e] each and every member of the proposed class").

---

[10] No party identifies any "litigation concerning the controversy already begun," and thus WIS. STAT. § 803.08(2)(c)2. is not a barrier to class certification.

[11] The DOC and circuit court frame manageability as a predominance issue, but we think it more closely aligns with superiority. *See* WRIGHT & MILLER § 1780 (saying manageability is "closely related to the finding the court must make regarding the superiority of the class action").

¶61 But the circuit court addressed this argument and determined that it "can handle damages." And it differentiated this case from *Hermanson*. In that case, individual employees were reporting their own work-hour data and thus were subject to cross examination. *Hermanson*, 290 Wis. 2d 225, ¶¶4, 6. By contrast, here a single expert would be providing damages data. So, the circuit court said the DOC could test the methodology and data "in a single motion or hearing." That conclusion is reasonable, and we owe deference to a court's decision on its ability to manage a case in its own courtroom. *See Hammetter*, 399 Wis. 2d 211, ¶9 (noting the circuit court's "broad discretion").

¶62 Next, the DOC argues that individual wage claims with the Department of Workforce Development are superior to class action. The DOC says that under § 803.08(2)(c)1., individuals have an "interest[] in individually controlling" their claim because they could get higher damages under certain wage-claim procedures. Thus, it says that class action is an undesirable forum under § 803.08(2)(c)3.

¶63 But the circuit court said individual officers "were subject to identical policies and have little to gain from independent litigation." It also determined that the court was a more desirable forum than wage-claim adjudication because this case presents a legal challenge to a state-wide policy. Those conclusions are reasonable—a class action is more efficient than individual wage claims.

¶64 In the end, the circuit court is in the best position to understand whether it can handle a class action in its courtroom. And we give deference to the circuit court's decision. *See Hammetter*, 399 Wis. 2d 211, ¶9. Here, the circuit court concluded that a class action is manageable and superior to individual wage claims. That conclusion is reasonable, and the circuit court examined the facts, applied the proper law, and used a demonstrative rational process. Thus, the circuit court did not erroneously exercise its discretion in deciding that superiority was met.[12]

---

[12] We are not alone in determining that a state-wide class of officers seeking compensation for pre- and post-shift work survives certification. Courts in other states have certified classes on near-twin facts and arguments. *See Hodge v. N.C. Dep't of Pub. Safety*, No. 5:19-CV-478-D, 2024 WL 499523 (E.D.N.C. Feb. 8, 2024); *Hootselle v. Mo. Dep't of Corr.*, 624 S.W.3d 123, 133–35 (Mo. 2021).

IV. CONCLUSION

¶65 At the class certification stage, a court's role "is not to adjudicate the case; rather, it is to select the method best suited to adjudication of the controversy fairly and efficiently." *Amgen*, 568 U.S. at 460 (cleaned up). Here, the circuit court's decision reflects that this case—which involves state-wide policy affecting thousands of employees—can be fairly and efficiently resolved in a class action. The circuit court did not erroneously exercise its discretion in certifying the class, and any decision on the merits is for another day.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

Aɴɴᴇᴛᴛᴇ Kɪɴɢsʟᴀɴᴅ Zɪᴇɢʟᴇʀ, J., with whom Rᴇʙᴇᴄᴄᴀ Gʀᴀssʟ Bʀᴀᴅʟᴇʏ, J., joins, concurring in part, dissenting in part.

¶66     In this case the circuit court certified a class under Wɪs. Sᴛᴀᴛ. § 803.08. The defendant, Department of Corrections (DOC), appealed, raising a number of arguments as to why the circuit court improperly certified the class. One of those arguments was that the plaintiffs do not state a viable claim. It was on this basis that the court of appeals reversed the circuit court's decision to certify the class. The court of appeals reasoned that

> [c]lass certification is not warranted [in this case] because the legal theory upon which the proposed class would recover damages has been rejected as a matter of law. Without a valid legal basis for damages upon which the purported class representatives can recover, the commonality and typicality requirements for class certification are not met.

*McDaniel v. Wis. Dep't of Corr.*, No. 2022AP1759, unpublished slip op., ¶1. (Wis. Ct. App. May 15, 2024) (per curiam); *see also id.*, ¶¶15–17.

¶67     The majority correctly reverses the court of appeals' decision, concluding that courts are not to perform a preliminary assessment of the merits when determining whether to certify a class under Wɪs. Sᴛᴀᴛ. § 803.08. Majority op., ¶¶26–32, 43. It is well established that "an evaluation of the merits of the underlying dispute is not a proper consideration when determining whether class certification is appropriate." 7AA Cʜᴀʀʟᴇs Aʟᴀɴ Wʀɪɢʜᴛ ᴇᴛ ᴀʟ., Fᴇᴅᴇʀᴀʟ Pʀᴀᴄᴛɪᴄᴇ ᴀɴᴅ Pʀᴏᴄᴇᴅᴜʀᴇ § 1785 (3d ed. 2005); *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Indeed, nothing in the text of § 803.08 "gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). When a court is considering the propriety of class certification in a particular case, the question is whether the requirements laid out in § 803.08(1) and (2) are met, not whether the plaintiff or plaintiffs state a claim for relief or will prevail on the merits. *Id.* at 178.

¶68     Although I agree with the majority that the court of appeals must be reversed, I disagree with the majority's decision to address DOC's other arguments, arguments on which the court of appeals never opined. I

would, instead, remand this case to the court of appeals to address those arguments in the first instance.

¶69     For the foregoing reasons, I concur in part and dissent in part.